534 A.2d 1081

**Virginia TRAVITZKY, Appellant,**

**v.**

**Thomas TRAVITZKY, Appellee. (Two Cases).**

Superior Court of Pennsylvania.

Argued Sept. 9, 1987.

Filed Dec. 15, 1987.

66

Joseph F. Lawless, Jr., Media, for appellant.

Lynne Z. Gold–Bikin, Norristown, for appellee.

Before MONTEMURO, POPOVICH and CERCONE, JJ.

MONTEMURO, Judge:

The instant case is a consolidation of two appeals and involves a complex factual and procedural history. The appellant, Virginia Travitzky, and the appellee, Thomas J. Travitzky, were granted an annulment of their marriage on October 31, 1979. Following the annulment, there was

extensive litigation between the parties concerning the custody and support of their two children. On November 29, 1982, following several changes in custody, Thomas Travitzky was granted custody of the children. In December of 1982, Virginia Travitzky, in violation of the trial court's custody order, left Montgomery County with the two children. She thereafter lived for three years under an assumed name with her children at a location outside of the state of Pennsylvania. During this time, Mr. Travitzky was not aware of the location of his children, and he searched for them. In January, 1986, Virginia Travitzky returned to Pennsylvania and was arrested and charged with kidnapping and interference with a custody order.

On June 18, 1986, a proceeding was held before the Honorable Samuel W. Salus, II, of the Court of Common Pleas of Montgomery County. Virginia Travitzky was represented by counsel at this proceeding. The parties' minor children were represented by a court appointed guardian *ad litem*. Thomas Travitzky appeared *pro se*. Counsel for Virginia Travitzky presented a document entitled "Agreement, Stipulation and Order" (hereinafter referred to as the "Agreement") which purported to resolve various custody, support and visitation matters. This Agreement required, *inter alia*, that Virginia Travitzky pay to Mr. Travitzky $25,500.00 "in partial consideration for damages allegedly suffered" by Mr. Travitzky as a result of his search for his children during the three years that Virginia Travitzky had them living outside the state of Pennsylvania. (R. at 61a). The Agreement also confirmed that Virginia Travitzky was to continue to have physical custody of the children. Mr. Travitzky was to have no court ordered visitation with his children and was not to be liable for the payment of any support for the two minor children. (R. at 62a). The Agreement also included the following provision:

Father [Mr. Travitzky] herewith represents that he is not desirous of having MOTHER criminally prosecuted in such proceeding as hereinabove described. Further, Father agrees that, if necessary, he shall communicate such

desire to the District Attorney for the County of Montgomery and, further, request that such outstanding criminal charges be *nolle prosqued* and/or withdrawn.

(R. at 63a).[1] The stated purpose of this Agreement was to resolve the myriad of disputes that had developed between the parties and, to that end, the Agreement includes a statement that the parties would "resolve, end, and terminate all existing legal proceedings between them" and would "not bring any further proceedings against each other relating to these matters and accruing up to the time of this Agreement." (R. at 60a).

The Agreement was executed by the parties and became an order of the court on June 18, 1986, following a colloquy in which Judge Salus outlined the contents of the Agreement and asked each party whether they understood and agreed to the various provisions.[2] Following the entry of

1. At the time of this hearing on June 18, 1986, it appears that the criminal prosecution for interference with a custody order was still pending against Virginia Travitzky. Also pending was a charge of indirect criminal contempt. (R. 60a). The kidnapping charge had apparently been dismissed.

2. Throughout this colloquy, Virginia Travitzky stated that she understood each provision of the Agreement as Judge Salus explained the provision. However, near the end of the proceeding, the following exchange took place:

 VIRGINIA TRAVITZKY: I understand it [the Agreement]. But I'd like to say I'm being forced into it. But I understand it.

 THE COURT: Well, if you are being forced into it, then, I'm not going to sign this thing, to be sure that you are doing it of your own free volition, any more than I would make a criminal defendant indicate that he understands this thing and that he is waiving his *Miranda* rights of his own free volition.

 VIRGINIA TRAVITZKY: I'm signing it, that's all there is to it. You know, what happens after, I don't know. We discussed how I felt about it, and I'm signing it because it's the only recourse I have in this courthouse.

 MR. KELLY [Counsel for Virginia Travitzky]: Ginny, are you saying ... your statement was that you were forced into this. Is your thoughts of being forced into this that which are the physical factual realities of the situation, that being, undergoing a long, protracted custody hearing, undergoing a possibly long, protracted criminal trial, and possibly then undergoing a protracted contempt hearing before Judge Davenport? Are those the things that you are indicating are the factual realities which are compelling you to enter this agreement?

the Agreement as an order of the court, Virginia Travitzky discharged her counsel and sought to have the Agreement vacated by appealing to this Court. On December 30, 1986, this Court quashed the appeal as interlocutory on the grounds that if Virginia Travitzky wished to claim that the Agreement was null and void because her consent to its terms had been procured through duress, she should have filed a petition in the trial court seeking to vacate the Agreement.

While this particular appeal was pending, Virginia Travitzky did not comply with the court order of June 18, 1986. Specifically, she did not pay the $25,500.00 to Mr. Travitzky. As a result, Mr. Travitzky filed a petition for contempt on September 23, 1986. The record in the instant case includes an unsigned Order for Hearing scheduling a hearing on the contempt petition for November 3, 1986. (R. at 6a). Virginia Travitzky appeared at the November 3, 1986 hearing *pro se.* During this hearing, Virginia Travitzky testified that she had signed the Agreement under duress and, when asked whether she had paid the $25,500.00, she stated that she did not have the money. (R. at 19a). Virginia Travitzky also acknowledged that she had filed a petition for support against Mr. Travitzky in August of 1986 and that she owned a home under an assumed name in Allentown, Pennsylvania. (R. at 28a). When she was questioned concerning her employment status, Virginia Travitzky testified that she had lost her job with Blue Cross of Lehigh County in June of 1986 when it merged with Capital Blue Cross in Harrisburg. (R. at 28a–29a). She also testified that she had lost a position with the Thermal Seal Window Corporation and that she had lost a waitressing position because of her health. (R. at 29a–30a). Virginia Travitzky also testified that she "had no way of applying for a loan against"

VIRGINIA TRAVITZKY: The fact that I know basically I would not get a fair trial in Montgomery County; so, I'm signing this.
MR. KELLY: Would you answer my question?
VIRGINIA TRAVITZKY: Yes, those are the things that are forcing me to sign it.
(R. at 81a–82a).

her house and that she did not "make enough to qualify for a loan." (R. at 42a).

■ During the November 3, 1986 contempt hearing, Virginia Travitzky attempted to have the court hear a petition for recusal which she had filed that morning. (R. at 44a).[3] The trial court stated that it would take this matter "under advisement." (R. at 46a). On November 21, 1986, Judge Salus entered an order finding that Virginia Travitzky was in willful contempt of the Agreement and of the court order dated June 18, 1986. She was ordered to pay the $25,500.00 plus $500.00 in counsel fees within thirty days, and in default thereof, a judgment would be entered against her. On December 11, 1986, when Mr. Travitzky had not received the $26,000.00, he filed a praecipe to enter judgment on the contempt order. Virginia Travitzky appeals from this November 21, 1986 Contempt Order.

On February 26, 1987, Virginia Travitzky filed a petition in the Montgomery County Court of Common Pleas to vacate the Agreement on the grounds that the Agreement is void as against public policy, that there has been a total failure of consideration because Thomas Travitzky has breached the Agreement, and that she had not entered the Agreement knowingly or voluntarily. (R. at 1a–3a). On the same day, Virginia Travitzky filed a motion to recuse

---

**3.** The transcript from this hearing reveals that Virginia Travitzky had also attempted to file a contempt petition against Mr. Travitzky for *his* alleged failure to comply with the terms of the Agreement. During the November 3, 1986 contempt hearing, she testified that the Court Administrator's Office would not accept this petition, "citing lack of jurisdiction." (R. at 45a). If we assume for the moment that this is what in fact occurred, it is difficult to comprehend the basis for the failure of the court to accept Virginia Travitzky's contempt petition when it had accepted Mr. Travitzky's petition and had scheduled a hearing on it. Moreover, trial court possess inherent powers to enforce their orders and decrees by imposing sanctions for failure to comply with their orders. *Rouse Philadelphia Inc. v. Ad Hoc '78*, 274 Pa.Super. 54, 71, 417 A.2d 1248, 1257 (1979), *cert. den.* 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980). This power is retained even after an appeal is filed, absent a *supersedeas. See* Pa.R.A.P. 1701(b)(2). Our review of the record in the instant case shows that no *supersedeas* had been granted. In any event, it is clear that on November 3, 1986, the trial court did not have a contempt petition filed by Virginia Travitzky before it for its consideration.

the Honorable Samuel W. Salus, II. On March 3, 1987, the trial court denied both the petition to vacate and the recusal petition, even though Mr. Travitzky had not responded to the petitions and even though there had been no hearing concerning these matters. On March 12, 1987, Virginia Travitzky's petition for reconsideration was filed and denied by Judge Salus. She appeals from the denial of the petition to vacate the Agreement but has not appealed from the denial of the recusal motion.

On March 25, 1987, Thomas Travitzky successfully entered judgment against Virginia Travitzky on the November 21, 1986 Contempt Order. (This judgment has apparently been docketed against the property held by Virginia Travitzky in Allentown, Pennsylvania). Virginia Travitzky also appeals from this entry of judgment.

In appealing the November 21, 1986 Contempt Order, appellant, Virginia Travitzky, raises four grounds upon which she contends the trial court erred, and upon which she seeks a reversal of the contempt order:

1. Did the trial court err in failing to follow the five-step, two-hearing procedure required for an adjudication of civil contempt?

2. Did the trial court err in adjudicating appellant in civil contempt in view of the uncontested evidence of her present inability to pay the sum of $25,500.00?

3. Did the trial court err in failing to address the question of contemptuous conduct of Mr. Travitzky?

4. Did the trial court err in refusing to consider appellant's motion for recusal?

Based on our disposition of appellant's first two issues, we find that we need not address appellant's remaining alleged grounds for reversal of the contempt order.[4]

4. We do note that, as discussed in footnote 3 *supra,* the question of contemptuous conduct on the part of the appellee, Mr. Travitzky, was not before the court on November 3, 1986. Appellant attempts to rely on the case of *Christian v. Allstate Insurance Company,* 348 Pa.Super. 252, 502 A.2d 192 (1985), for the proposition that the trial court was obligated to consider the question of contempt on the part of Mr. Travitzky when this issue was raised orally by appellant during the

 We agree with appellant that the law in Pennsylvania is well settled that a five-step, two-hearing procedure is required to hold one in civil contempt. *See In re Death of Deol,* 84 Pa.Commw. 306, 479 A.2d 55 (1984); *Whitt v. Philadelphia Housing Authority,* 325 Pa.Super. 135, 472 A.2d 684 (1984). We reject as patently erroneous appellee's contention that the five-step, two-hearing procedure applies only to actions for support. This has never been the law of this State. We also agree with appellant that the record in the case at bar clearly shows that the proper procedure was not followed. The five steps include: (1) a rule to show case; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation, and (5) an adjudication of contempt. *In re Death of Deol, supra; Whitt v. Philadelphia Housing Authority, supra.* In this case, no rule to show cause was issued or served. There was no hearing on the rule, and the rule was not made absolute. However, in the instant case, we cannot base a reversal of the contempt order on the trial court's failure to follow the procedural requirements prerequisite to an adjudication of civil contempt, because appellant has waived this issue. During the November 3, 1986 contempt hearing, appellant never objected that she was not being accorded necessary procedures. Further, this issue was not raised by appellant in her application for post-trial relief in the nature of exceptions to the order of contempt. This Court has recently stated specifically in reference to civil contempt proceedings that an "appellant may not have remained silent before the court below and now be heard to complain that the trial court's

November 3, 1986 hearing. Appellant's reliance on *Christian* is misplaced. *Christian* concerned a petition to enforce a settlement. In *Christian,* the *existence* of the settlement was in dispute and this Court held that the trial court erred in not conducting an evidentiary hearing on the existence of the disputed settlement before granting the petition to enforce it. In the instant case, the *existence* of the Agreement was not in dispute. Appellant's remedy was to file a petition and allege that Mr. Travitzky was in contempt of the Agreement.

As to appellant's fourth issue, we note that appellant did file a motion to recuse Judge Salus on February 26, 1987, which was denied on March 3, 1987. Appellant has not appealed from the trial court's denial of the recusal motion.

procedures were improper." *Fenstamaker v. Fenstamaker,* 337 Pa.Super. 410, 418, 487 A.2d 11, 15 (1985).

In regard to appellant's second issue, it has been recognized that the general rule regarding civil contempt cases is that the complaining party has the burden of proving noncompliance with the court order by a preponderance of the evidence, and that present inability to comply is an affirmative defense to be proved by the contemnor. *In re Grand Jury, April Term, 1977, Wayne County,* 251 Pa.Super. 43, 53, 379 A.2d 323, 327 (1977). In *Barrett v. Barrett,* 470 Pa. 253, 264, 368 A.2d 616, 621 (1977), our supreme court held that when a contemnor presents evidence of present inability to comply with the court order, the trial court must set conditions for purging the contempt with which it is convinced *beyond a reasonable doubt,* from the totality of the evidence before it, the contemnor has the *present* ability to comply. In reference to the civil contempt power, the court in *Barrett* stated that "the use of the power to enforce compliance is exercised with the objective of compelling performance and not inflicting punishment. In accordance with this principle, we have indicated that a court may not convert a coercive sentence into a punitive one by imposing conditions that the contemnor cannot perform and thereby purge himself of the contempt." *Id.,* 470 Pa. at 262, 368 A.2d at 620 (citations omitted). We find that although the trial court's finding of civil contempt was warranted, there was insufficient evidence that appellant had the present financial ability beyond a reasonable doubt to comply with the conditions imposed by the trial court to purge herself of contempt, namely the payment of $25,500.00 plus $500.00 in counsel fees within 30 days. We must therefore vacate the order directing payment of the $25,500.00 plus counsel fees and remand for further findings of fact to determine what conditions will be sufficiently coercive yet enable appellant to comply. *See Durant v. Durant,* 339 Pa.Super. 488, 489 A.2d 266 (1985).

In finding that appellant had the present ability to comply with its order, the trial court relied on the following:

(a) Appellant 'owns property in Allentown, Lehigh County.'

(b) Appellant 'received a property settlement award upon the divorce of the parties.'

(c) Appellant 'has an earning capacity of at least $400.00 per week.'

(d) Appellant 'was able to support herself for three years prior to the children's return to their father.'

(Amended Opinion of Trial Court at 4). Initially, we note as to (b), appellant and appellee were in fact granted an annulment and our comprehensive review of the record has revealed no evidence that appellant received a property settlement upon the dissolution of this marriage.[5] Further, the trial court's finding that appellant has an *earning capacity* of at least $400.00 per week does not establish that appellant had the present ability on November 3, 1986 to pay $25,500.00 plus $500.00 in counsel fees within 30 days. Appellant's uncontested testimony established that on the date of the contempt hearing, she was unemployed. Although appellee contends in his brief that appellant deliberately quit her job to avoid the financial obligations of the Agreement, there is nothing in the record to support appellee's assertion. (Brief for Appellee at 11). On the contrary, appellant testified that she had lost her job with Blue Cross due to a change in the location of Blue Cross' offices and that she was not able to continue her work as a waitress because of health problems. (R. at 28a–30a). Likewise, we cannot agree with the trial court that the fact that appellant was able to support her children for three years prior to the contempt hearing is proof of her present ability to pay this sum of money as of November 3, 1986. Indeed, this fact tends to show that any funds that appellant may have had were likely expended in supporting her two children espe-

5. Even if we were to assume, *arguendo,* that appellant *did* receive a property settlement, this would not change our result in this case. There is nothing in the record to show that the trial court determined the value of any property that appellant allegedly received or that the trial court determined that appellant still owned the property at the time of this contempt proceeding.

cially in view of the fact that appellant received no child support during this period of time.

It appears that appellant's ownership of property in Allentown, Pennsylvania is the only factor that the trial court could have relied upon to find that appellant had the present ability to comply with its order. However, the problem is that the record contains no evidence, and presumably the trial court made no determination, as to the value of this property, whether appellant owned it individually, or whether the property was subject to any encumbrances. In short, the trial court made no determination of appellant's equity in this property. As a result, it is obvious that there was insufficient evidence for the trial court to conclude that it was convinced *beyond a reasonable doubt* that appellant had the present ability to pay the $26,000.00 within a thirty day period.

The facts of this case are similar to those in the case of *Muraco v. Pitulski*, 470 Pa. 269, 368 A.2d 624 (1977). In *Muraco*, the appellant had been found to be in contempt of a support order and was required to pay his arrearages which amounted to $7,184.00 in order to purge himself of the contempt. The supreme court in *Muraco* found that there was insufficient evidence for the trial court to have concluded that appellant had the present ability to pay the sum of $7,184.00 where appellant had testified that he was involuntarily unemployed, that he was receiving public assistance, and that he owned no property and had no bank accounts. Likewise, in the more recent case of *Durant v. Durant*, 339 Pa.Super. 488, 489 A.2d 266 (1985), the appellant, Mike Durant, had been found to be in willful contempt of court for failing to pay a support order. He was ordered to pay $4,766.00 in arrearages within ten days of the contempt order. In vacating the order directing payment of $4,766.00, we concluded as follows:

> ... in the instant case, a totality of the evidence supports a conclusion that Mike Durant operates Durant's Tavern and is entitled to all proceeds therefrom, but his accountant testified that the net profit of the business in 1982

was $1,848.00. N.T., 9/8/83 at 6. There must be sufficient evidence from which the trial court may find beyond a reasonable doubt that appellant has the present ability to purge himself of the contempt citation. After a thorough review of the entire record, however, we find nothing further to indicate that appellant has access to the sum of $4,766.00 or may readily obtain that amount. *Id.*, 339 Pa.Superior Ct. at 492, 489 A.2d at 268. *See also Commonwealth ex rel. Heimbrook v. Heimbrook*, 295 Pa. Super. 300, 441 A.2d 1242 (1982); *Yurt v. Brumage*, 289 Pa.Super. 88, 432 A.2d 1064 (1981). *Cf. Hopkinson v. Hopkinson*, 323 Pa.Super. 404, 470 A.2d 981 (1984) (finding of present ability to comply with contempt order to pay $5,000.00 supported by evidence that contemnor had a lucrative medical practice, had entered into an agreement to purchase real estate for $163,000.00, had maintained a membership at a country club at a cost of $1800.00 per year, and had purchased season tickets for professional hockey games).

■ We now turn to appellant's contention that the trial court erred in dismissing her petition to vacate the Agreement before appellee had filed an answer to the petition and before either party had proceeded pursuant to Pa.R.C.P. 209. We agree with appellant that the trial court's decision to dismiss appellant's petition to vacate the Agreement was premature.

Pa.R.C.P. 209 provides:

If, after the filing and service of the answer, the moving party does not within fifteen days: (a) Proceed by rule or by agreement of counsel to take depositions on disputed issues of fact; or (b) Order the case for argument on petition and answer (in which event all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of the rule); the respondent may take a rule as of course on the moving party to show cause why he should not proceed as above. If after hearing the rule shall be made absolute by the court, and the petitioner shall not proceed, as

above provided, within fifteen days thereafter, the respondent may order the cause for argument on petition and answer, in which event all averments of fact responsive to the petition and properly pleaded in answer shall be deemed admitted for the purpose of the rule.

In a unanimous *en banc* opinion, *Maurice Goldstein Company, Inc. v. Margolin*, 248 Pa.Super. 162, 374 A.2d 1369 (1977), this court discussed the operation of Rule 209. In that case, which involved a denial of a petition to open a default judgment, we noted the following:

Here, when the lower court ruled on the petition, *neither* party had taken any action under Rule 209. *Neither* party had ordered the cause for argument—or, more precisely (since both parties in their praecipes declined oral argument), for decision—on petition and answer. Since Rule 209 places no time limit on respondent's taking of a rule on petitioner, *both appellee as respondent and appellant as petitioner had the option* (until entry of the lower court's order) *to take action. Until one of the parties did act as provided by the Rule*, or until some other force spurred matters along, the court should not have acted.

We do not mean that a motions court must wait for the parties to bestir themselves. We have said, 'until some other force spurred matters along.' The motions court itself may set a timetable for taking depositions and for decision. If the court does this, however, it must give notice to the parties.

*Id.*, 248 Pa.Superior Ct. at 166–167, 374 A.2d at 1371–1372 (emphasis added) (footnotes omitted). In *Instapak Corporation v. S. Weisbrod Lamp & Shade Co., Inc.*, 248 Pa.Super. 176, 374 A.2d 1376 (1977), the trial court had ordered a default judgment opened after the petition to open and the answer to the petition had been filed. In *Instapak*, after noting that the pleadings had raised a material issue of fact, we stated that "[we] are not informed by the lower court whether it accepted appellant's or appellee's version of the facts on that issue. The important point, however, is that

the lower court was not in a position to accept one version in preference to the other.... The court had before it no evidence, only contradictory pleadings." *Id.*, 248 Pa.Superior Ct. at 180–182, 374 A.2d at 1378–1379. We therefore remanded the case to the trial court for further proceedings consistent with Rule 209.

■ When the trial court in the instant case dismissed appellant's petition to vacate the Agreement, it had only appellant's petition before it. No answer to the petition had been filed. Thus, the trial court could not have known what material factual issues would have been disputed by appellee. Appellant alleged the following as grounds upon which the Agreement should be vacated:

(1) The statement in the Agreement that Thomas J. Travitzky will not be liable for the support of the parties' two minor children is void as against public policy.[6]

(2) There has been a complete failure of consideration because Thomas J. Travitzky never contacted the District Attorney's office to "advise that he did not wish Mrs. Travitzky criminally prosecuted" and did not request that the "criminal charges be *nolle prossed* and/or withdrawn." (R. at 3a). Also Mr. Travitzky continued to participate in the indirect criminal contempt proceeding pending against Virginia Travitzky.

(3) Virginia Travitzky did not enter the Agreement knowingly or voluntarily.

In its order of March 3, 1977, dismissing appellant's petition, the trial court states that the Agreement was "entered into with full knowledge, appropriate mental facilities and with the assistance and negotiating powers of counsel." The problem with the trial court's conclusion is

---

6. We note that it is well-settled that a parent cannot contract away the right of his or her child to seek adequate support from the other parent. *Miesen v. Frank,* 361 Pa.Super. 204, 208, 522 A.2d 85, 87 (1987) (citations omitted). Even though we express no opinion as to whether the trial court could have granted appellant's petition to vacate on this ground alone, the fact that this provision is contrary to public policy of our State was a factor for the trial court to consider in conjunction with the other grounds raised by appellant in her petition to vacate the Agreement.

that it was of necessity based entirely upon the trial court's personal involvement and knowledge of the instant case. However, when appellant filed her petition to vacate the Agreement, she raised a material issue of fact for the court to determine, that being whether it was in fact her voluntary intent on June 18, 1986, to enter the Agreement. Appellant, as petitioner, had the burden of supporting her allegations of fact. *Reztback v. Berman Co.*, 222 Pa.Super. 523, 294 A.2d 917 (1972). On the issue of duress, appellant was not provided with an opportunity to present any evidence to meet this burden. *See Smith v. Dale*, 405 Pa. 293, 175 A.2d 78 (1961). Appellant was not provided with the opportunity to take depositions as contemplated by Rule 209. Moreover, our record contains an affidavit which was filed by appellant on March 12, 1987, after the trial court had dismissed her petition to vacate the Agreement. In this affidavit, appellant states that both the lawyer who represented her when she entered the Agreement and Judge Salus threatened and intimidated her by telling her that she would lose her children if she did not consent to the Agreement (R. at 48a). Due to the trial court's premature dismissal of appellant's petition, appellant did not have a chance to present this testimonial evidence to the trial court. Further, Rule 209 contemplates that the moving party may proceed to take depositions on disputed issues of fact *or* order the cause for argument on the petition and answer. The procedure followed in the instant case is strikingly similar to that followed in *Nigrelli v. Cody*, 281 Pa.Super. 156, 421 A.2d 1195 (1980). In *Negrelli*, an administrative judge had simply decided the case without notice to the parties. In that case, we stated that "the procedure followed here was an even more flagrant abuse than in *Maurice Goldstein, supra,* since here the parties had not waived their right to oral argument under Pennsylvania Rule of Civil Procedure 211."[7] *Id.,* 281 Pa.Superior Ct. at 160, 421

7. Pennsylvania Rule of Civil Procedure 211 provides in pertinent part: "Any party or his attorney shall have the right to argue any motion and the court shall have the right to require oral argument. With the approval of the court oral argument may be dispensed with by

A.2d at 1197. Not only was appellant unable to develop factual evidence to support her allegation of duress, she was deprived of the opportunity to present oral argument in support of her contentions. Our supreme court has recognized that after the filing and service of an answer, the petitioner then is *ordinarily* entitled under Pa.R.C.P. 209 to proceed within 15 days to take depositions *or* to move the case for argument on the petition and answer. *Schultz v. Erie Insurance Exchange,* 505 Pa. 90, 94, 477 A.2d 471, 472 (1984).

As to appellant's contention that the Agreement should be vacated because of a complete failure of consideration, the trial court, in its opinion dated May 26, 1987, states, *inter alia,* that:

> We disagree with plaintiff's argument. Clearly there was consideration between the parties at the execution of the Agreement–Stipulation.... This Court will not vacate an agreement pursuant to plaintiff's petition, particularly where the validity of the Agreement–Stipulation was upheld by the Superior Court.

(Opinion of Trial Court, May 26, 1987 at 3–4). Here again, issues of material fact, which would presumably have been disputed or justified in appellee's answer, were presented by appellant's petition. For example, did Thomas Travitzky refuse to contact the District Attorney and had he in fact *expedited* the indirect criminal contempt proceeding? Again, appellant as the moving party was denied the right and opportunity to substantiate the factual allegations of her petition through depositions. Further, she was denied the opportunity to present at oral argument her contention that these facts, if established, warranted an order vacating the Agreement. Further, we find it troublesome that the trial court was of the opinion that this Court had reviewed the Agreement and had upheld its validity. On the con-

agreement of the attorneys and the matter submitted to the court on the papers filed of record or on such briefs as may be filed by the parties".

trary, this Court had quashed appellant's earlier appeal as interlocutory on the grounds that if appellant wished to claim that the Agreement was null and void, she must file a petition in the trial court seeking to vacate the Agreement. This she did.

■ Because we are convinced that appellant's petition to vacate raised material factual issues, we find that the trial court abused its discretion in dismissing the petition before the appellee had filed an answer and before either party had proceeded pursuant to Rule 209. *Cf. Urban v. Urban,* 332 Pa.Super. 373, 481 A.2d 662 (1984). We therefore find it necessary to remand for further proceedings to allow appellant to prove her allegations under the procedures of Rule 209. *See Hudgins v. Jewel T. Discount Store,* 351 Pa.Super. 329, 505 A.2d 1007 (1986); *Philadelphia City Employees Federal Credit Union v. Bryant,* 310 Pa.Super. 526, 456 A.2d 1060 (1983); *White v. Alston,* 231 Pa.Super. 438, 331 A.2d 765 (1974). We have mentioned that appellant filed a motion for recusal of Judge Salus which was denied on March 3, 1987. While this matter is not before us and, therefore, we express no opinion on the disposition of appellant's recusal motion, we do believe that this entire matter should be heard by a different judge on remand. We find, based upon our review of the record, that there is a significant possibility that Judge Salus may be called as a witness. In addition, it is clear that issues of credibility may arise in determining whether appellant has grounds upon which to vacate this Agreement and, if the Agreement is upheld, then whether appellant has the present ability to comply with the court's contempt order. In such situations, we have said that "we think we should not ask a judge to resolve issues of credibility when he has already expressed his opinion of one of the parties.... It will be better if the proceedings on remand start afresh." *McCurry v. McCurry,* 279 Pa.Super. 223, 238, 420 A.2d 1113, 1121 (1980).

Finally, on March 25, 1987, Thomas Travitzky did enter judgment against appellant pursuant to the November 21,

1986 Contempt Order. We find that the trial court did not err in entering this judgment because of the provisions of Pa.R.A.P. 1701(b)(2):

> After an appeal is taken or review of a quasi judicial order is sought, the trial court or other government unit may:
>
> . . . . .
>
> (2) Enforce any order entered in the matter, unless the effect of the order has been superseded as prescribed in this chapter.

*See also County of Lawrence v. Pennsylvania Labor Relations Board,* 79 Pa.Commw. 14, 469 A.2d 1145 (1983).

We now remand with these instructions:

Within twenty (20) days of the filing of this Opinion, appellee, Thomas J. Travitzky, shall file an answer to appellant's petition to vacate the Agreement. Thereafter, appellant, Virginia Travitzky, shall proceed pursuant to Pa.R. C.P. 209 to take depositions on disputed issues of fact or order the cause for argument on petition and answer. Should Virginia Travitzky fail to so proceed within fifteen (15) days of filing and service of the answer, Thomas Travitzky shall have the opportunity to proceed as provided in Pa.R.C.P. 209(b). Upon its decision in regard to the petition to vacate the Agreement, the trial court shall promptly proceed to address the remand of the November 21, 1986 civil contempt order in a manner consistent with this Opinion. The Judgment entered against Virginia Travitzky pursuant to the November 21, 1986 contempt order is hereby stayed pending disposition of these matter by the trial court.

Jurisdiction of this panel is relinquished.

Jurisdiction of this Court is retained.