637 A.2d 622

**Sandra Lee Fitz SMITH, Appellee,**

v.

**Davis Page SMITH, III, Appellant (Two Cases).**

Superior Court of Pennsylvania.

Argued Oct. 7, 1993.

Filed Dec. 17, 1993.

Edward H. Fackenthal, Norristown, for appellant.

Before POPOVICH, JOHNSON and HOFFMAN, JJ.

POPOVICH, Judge:

The Appellant/Defendant, Davis Page Smith, III, files dual appeals: The first challenges an order of support and the second questions a contempt order. We quash in part and affirm in part.

The record discloses that the Plaintiff, Sandra Lee Fitz Smith, filed a complaint in divorce seeking, *inter alia,* support for herself and her two children. A temporary order was issued on October 17, 1989, for $2,800.00 per week. Thereafter, the order was modified by the court on December 28, 1989, directing the Defendant to pay $4,600.00 per week. This

was "based upon defendant's admission as to his then annual earnings of $700,000.00, for which the Court determined he netted $10,900.00 per week."[1] Trial Court Opinion, 3/30/93 at 1.

A civil contempt order was issued by the court on February 12, 1990, attaching the Defendant's wages and directing him to pay $13,800.00 forthwith.[2] On March 20, 1990, a second civil contempt order was issued attaching the Defendant's wages and placing liens on various pieces of his property.[3]

Next, an order of court sur civil contempt was issued February 4, 1993, directing the Defendant to pay $1,500.00 and remanding him to the Montgomery County Prison until the amount stated was paid.[4] "The $1,500 amount was paid and Smith was released the next day. The record does not disclose who paid the amount." Appellant's Brief at 5–6. Appeals followed in a timely fashion and seek review of the support and contempt orders entered on February 4, 1993.

In respect to the order directing payment of $4,600.00 per week in spousal and child support, the Appellant contends that the court abused its discretion because he was financially destitute—bankrupt and unemployed—at the time of trial and the current earnings of both parties were not viewed in light of the Support Guidelines or *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984).

Procedurally, the Appellant's efforts to modify the December 28, 1989, order occurred *at a hearing* on May 7–8 of 1990.

1. In the record appears W–2 forms listing the Defendant's earnings for 1988 at $699,078.00 and $390,616.00 for 1989.

2. The Director of Domestic Relations for Montgomery County signed an affidavit that the Defendant owed $101,600.00 as of February 28, 1990.

3. An amended affidavit by the Director of Domestic Relations indicated that the Defendant owed $143,000.00 as of May 4, 1990.

4. "As of February 4, 1993, defendant was $798,779 in arrears on the Order [of December 28, 1989, for $4,600.00 per week], having made a single $100 payment in 1993. Throughout 1991 and 1992, defendant made only twelve payments totalling a mere $2,021." Trial Court Opinion, 3/30/93 at 1.

Thereafter, the court issued an order on February 4, 1993, affirming the 1989 support requirements.[5]

The issues relating to the support order, when distilled, consist of challenges to the court's discretion and necessitate a review of the "sufficiency" of the evidence to resolve the matter. See *Rock v. Rock*, 385 Pa.Super. 126, 560 A.2d 199, 201 (1989).

Our ability to apply the aforementioned standard is compromised by a deficiency in the record, i.e., the May 7–8, 1990, hearing transcript has not been made a part of the official record certified to this Court, a function reserved specifically to the party seeking appellate review. See Pa.R.App.P. 1911(a); *Commonwealth v. Chopak*, 532 Pa. 227, 615 A.2d 696, 701 n. 5 (1992); *School District v. Maryland Casualty Co.*, 402 Pa.Super. 569, 587 A.2d 765, 768 (1991); *Butler v. Flo–Ron Vending Co.*, 383 Pa.Super. 633, 557 A.2d 730, 738 (1989); *Thomas v. Duquesne Light Co.*, 376 Pa.Super. 1, 545 A.2d 289, 291 (1988).

In resolving the matter, we are guided by the following precepts: *First,* it is black letter law in this jurisdiction that an appellate court cannot consider anything which is not a part of the record in the case. See *McCaffrey v. Pittsburgh Athletic Association,* 448 Pa. 151, 293 A.2d 51, 57 (1972). *Second,* it is the responsibility of the Appellant to supply this Court with a *complete* record for purposes of review. See Rule 1911(a); *Chopak,* supra; *Maryland Casualty Co.,* supra; *Butler,* supra; *Thomas,* supra. *Third,* although no reproduced record has been offered by the Appellant to remedy the deficiency in the official record, we would note that reproduction of the record is not an acceptable substitute for the original, certified record. See *Gemini Equipment v. Pennsy Supply,* 407 Pa.Super. 404, 595 A.2d 1211, 1215 n. 5 (1991); *Frank v. Frank,* 402 Pa.Super. 458, 587 A.2d 340, 342–43 n. 5 (1991); *McCormick v. Allegheny General Hospital,* 364 Pa.Super. 210, 527 A.2d 1028, 1033 (1987); *Ritter v. Ritter,* 359

---

**5.** We have no indication of record for the inordinate delay (almost 3 years) between the 1990 support hearing and the court's order of February of 1993 affirming the 1989 order of support.

Pa.Super. 12, 518 A.2d 319, 323 (1986). *Fourth,* a failure by an Appellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes a waiver of the issue(s) sought to be examined. See *Maryland Casualty Co.,* supra; *Butler,* supra.

■ At bar, the aforesaid translates into our inability to assess the merits of the Appellant's arguments seeking a reversal of the support order.

Presently, the Appellant challenges the order of support on grounds necessitating a review of the hearing transcript. For example, the Appellant attributes the court with abusing its discretion in entering a support order without taking into consideration his financial and unemployment status, considering *facts* "exist[ing] at the commencement of the proceedings rather than nine months later at the time of trial," and deciding his support obligations without determining the current earnings of the litigants or applying *Melzer* or some reasonable variation thereof. See Appellant's Brief at 2.

■ Because we have been presented with *no evidence of record* to support the relief requested by the Appellant, the course to pursue is well-marked and directs that, "where the appellant is remiss in fulfilling th[e] duty [to provide a record which is sufficient to permit meaningful appellate review as is the case here], the appeal *must be quashed.*" *Chopak,* supra, 532 Pa. at 236, 615 A.2d 696, 701 n. 5, quoting *Fox v. Gabler,* 377 Pa.Super. 341, 346, 547 A.2d 399, 401 (1988) (Emphasis added). Therefore, the appeal perfected at No. 830 PHL 1993 is quashed.[6]

---

6. The result we reach in this appeal is dictated by the (in)action of the Appellant, who failed to satisfy his responsibility to assure that the official record was complete. This nonfeasance is not to be condoned, nor is it to be remedied by Superior Court taking the initiative to secure the record below and to guarantee that all needed documents have been made a part of the official record. See, e.g., *Commonwealth v. Chopak,* 532 Pa. 227, 615 A.2d 696, 701 n. 5 (1992); *Thomas v. Duquesne Light Co.,* 376 Pa.Super. 1, 545 A.2d 289, 291 (1988).

With the burgeoning case load (which stands presently at over 7,200 appeals filed with Superior Court), this Court does not have the luxury of *personally* checking on the record filed with our prothonotary to

We next turn our attention to the Appellant's challenge of the February 4, 1993, order holding him in contempt for failing to pay arrearages totalling $800,000.00. For not complying with the support order, the Appellant was directed to pay $1,500.00 *and* placed in jail until payment was made.

The Appellant argues that he was denied his due process rights in that a formal hearing, wherein testimony was presented in open court, was dispensed with by the court in favor of eliciting argument from counsel. Also, the court proffered the view that with the Appellant's payment of the $1,500.00 to exit jail, which occurred the day after the order was entered, he purged himself of the mantel of contempt and rendered inquiry of the order moot. We disagree in part.

In *Altemose Construction Co. v. Building & Construction Trades Council,* 449 Pa. 194, 296 A.2d 504 (1972) (plurality opinion, but six participating justices agreed on contempt issue), cert. denied, 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973), our Supreme Court reversed the judgments of contempt imposed upon picketers for procedural irregularities held to be violative of due process.

More specifically, the trial court in *Altemose* had issued an injunction limiting union picketing. The next day (June 6th) the picketers were arrested for violating the previous day's order.

assure proper appellate review. This responsibility lies with the Appellant. *Id.* Notwithstanding such a fact, we took the "extraordinary" step to communicate with the Superior Court prothonotary and we were advised that no hearing transcript (as to the May 7–8, 1990 proceeding) was filed in the case at bar. See *In re M.T.,* 414 Pa.Super. 372, 607 A.2d 271, 276 (1992).

We may not merely close our eyes to such non-compliance with our Rules of Appellate Procedure, the consequences of which hamstrings our ability to conduct a meaningful appellate review. Each arm of the appellate process (litigants and judiciary alike) has been assigned a responsibility to assure the smooth, efficient and expeditious disposition of appellate cases. See Pa.R.App.P. 1911 *et seq.* When one cog in the machinery of justice malfunctions, the end result is a backlog of cases which hampers the dispute-resolution process, either by delaying a disposition of the matter or prompting a dismissal of the appeal. See Rule 1911(a), (d).

It appears that a contempt hearing was held the day following the issuance of the preliminary injunction, i.e., June 6th at 2 p.m. The individual arrestees, albeit not expressly represented, had counsel from the union speak extensively on their behalf. Following testimony by the Sheriff and other witnesses as to the events of the morning, the trial judge called the contemnors individually to the bar of the court for interrogation by him. Of the 129 arrested, 125 were adjudged guilty of civil contempt and fined $100.00. The contemnors were to "stand committed until the sentence of the court [wa]s complied with."

Later in the day of their incarceration, all were released when the fines were paid for the contemnors by their unions. An appeal was perfected claiming, *inter alia*, that the contemnors were denied procedural due process. The Supreme Court agreed, but, before holding so, held that the payment of the fines by the contemnors did not render their appeal moot because the trial court acted beyond its authority by not affording the contemnors their procedural due process rights. Such "irregularities" were sufficiently serious to render the case analogous to one where there was no power to act on the part of the trial court. As to the requirements which were not met, the *Altemose* Court commented:

> The long-standing procedural safeguards attendant upon civil contempt proceedings have been recently reviewed by Mr. Justice O'Brien in *Com. ex rel. Magaziner v. Magaziner*, 434 Pa. 1, 253 A.2d 263 (1969). There we stated that civil contempt was a several step process: "rule to show cause why an attachment should not issue, an answer and hearing, rule absolute (arrest), hearing on the contempt citation, adjudication of contempt." 434 Pa. at 6, 253 A.2d at 266. The court quoted with approval the statement in *Douglass–Whisler Brick Co. v. Simpson*, 233 Pa. 517, 519, 82 A. 760 (1912), that "arrest and imprisonments of a party in a civil proceeding for contempt in violating an order or decree cannot issue without such previous notice as will afford him an opportunity of being heard." While it appears that the individual appellants had notice, through the

Sheriff, of the injunction [if they did not disperse from the scene], we think it clear that "opportunity of being heard" embraces more than opportunity, after being first arrested and jailed and without time to consult with counsel if desired, to show cause why one should not be held in contempt.

\* \* \* \* \* \*

Nothing in the reprehensible disobedience of those who heard the Sheriff's reading of the court's injunction operated to deprive them of the plain mandates of our statutory law, which are but declaratory of the constitutional guarantees of due process of law. See *Philadelphia Marine Trade Association [v. International Longshoremen's Association, Local Union No. 1291]* supra, 392 Pa. 500, at 511, 140 A.2d 814 [1958].

449 Pa. at 518, 296 A.2d at 518–19 (Footnote omitted).

At bar, the trial court recounted the events as follows:

Pursuant to Pennsylvania Rule of Civil Procedure 1910.-21, defendant was summoned to an attachment hearing before a Domestic Relations Hearing Officer on the morning of February 4, 1993. When an accommodation as to arrearages could not be reached by agreement, *the defendant was directed to appear before the undersigned at 1:30 p.m. to determine whether he should be found in contempt for failure to pay the support order.* At that hearing, defendant, through his counsel, advanced several defenses. His principal contention was that he had fallen on hard times and now subsists by selling and leasing used cars. He insisted he had no present ability to pay the significant arrearages. In this regard, he told the Court that his earnings in 1992 totaled a mere $8,400. He further indicated that the support order in question was the subject of an appeal which had not yet been resolved.

We determined that even if defendant's earnings were limited as he claimed, his woeful payment record over the last several years still warranted a finding of contempt. Using defendant's figures, we determined that the differ-

ence between what he paid in 1992 and an appropriate support order predicated on minimum wage, would require payment of an additional $1,500. Accordingly, we issued a Contempt Order directing him to pay $1,500 forthwith or be remanded to Montgomery County Correctional Facility pending payment of that sum. The Order also provided that defendant was eligible for work release program. The next day, defendant paid the $1,500 and was released from custody. Defendant has appealed the Order adjudicating him in contempt....

\* \* \* \* \* \*

*Defendant [] ... challenge[s] ... the Court's failure to conduct a hearing with sworn testimony. Instead, the Court engaged in colloquies with the defendant, his counsel and the plaintiff, during which all were invited to state their positions. This is the customary Montgomery County practice where the list judge on any given day is required to deal with numerous contempt cases in a limited amount of time.* Sworn testimony will be taken but only at the request of a party. No such request was made here and defendant in no way objected to the conduct of the hearing. Consequently, any criticism of this procedure has been waived.

Trial Court Opinion, 3/30/93 at 2–3, 6 (Emphasis added; footnote omitted; citation omitted).

Initially, we wish to respond to the trial court's assertion that the present appeal is rendered moot by the Appellant's payment of the $1,500.00, which prompted his release after serving time in jail.

As in *Altemose,* we find that the "irregularities" that accompanied the contempt "colloquy" were violative of the Appellant's procedural due process rights. For example, the Appellant was given no advance notice (by rule to show cause) of the potential for civil contempt proceedings to follow on the heels of his appearance in the Domestic Relations Division. See *Douglass–Whisler Brick Co. v. Simpson,* 233 Pa. 517, 519, 82 A. 760 (1912). On the contrary, the Appellant was merely

advised to appear for an attachment hearing before a domestic relations hearing officer on the morning of February 4, 1993. Only after arrearages could not be ameliorated was the Appellant "directed to appear before [the trial court] ... at 1:30 p.m. to determine whether [the Appellant] should be found in contempt for failure to pay the support order."

From our review of the record, it would appear that none of the requirements reiterated in *Altemose,* as a condition precedent to finding one in civil contempt, was satisfied. The fact that the trial court may have been "required to deal with numerous contempt cases in a limited amount of time" (see Trial Court Opinion, 3/30/93 at 6), and, therefore, dispensed with the notice and/or the taking of testimony, is not the basis upon which we choose to affirm the order of contempt.[7] Rather, we find that the Appellant's failure to object to the court's noncompliance with the procedural shortcomings attendant to the contempt proceeding constituted a waiver of his *Altemose* argument.

Our conclusion is predicated upon our Supreme Court's ruling in *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974), which succeeded *Altemose* and abolished the "basic and fundamental error" rule allowing for review of an issue not preserved at trial by aligning it with a claim of "basic and fundamental error" to secure appellate scrutiny.

Specifically, *Dilliplaine* held in unequivocal terms that:

Perhaps at an earlier stage of our jurisprudential development this practice [of counsel not claiming error at trial]

---

7. On this concern for expeditious justice, this Court has spoken:
 Promptness in the administration of justice is commendable, but haste which disregards fundamental principles may prove disastrous. *Commonwealth v. Gabel,* 79 Pa.Super. 59, 62, quoted with approval in *Altemose Construction Co. v. Building & Construction Trades Council,* 449 Pa. 194, 296 A.2d 504, 519 (1972) (plurality opinion), cert. denied, 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973).
 Thus, because of our holding that the Appellant has waived his assault upon the court's failure to comply with the procedural steps reiterated in *Altemose* prior to holding one in civil contempt, we leave for another day (i.e., when the issue is *preserved* for appellate review) our assessment of the propriety of the court's "expedited" contempt proceedings brought on by a busy court-calendar.

could be justified. Today, however, there is no excuse for and appellate courts should not encourage less than alert professional representation at trial. Virtually all active practitioners at our bar have had a formal legal education at a law school accredited by the American Bar Association. The Pennsylvania Bar Institute, Pennsylvania Trial Lawyers Association, and local bar associations as well as the American Bar Association and the American Law Institute provide programs of continuing legal education for members of the bar.

Requiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct alleged trial errors. This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.

457 Pa. at 259, 322 A.2d at 116–117 (Footnotes omitted).

Moreover, notwithstanding *Altemose,* subsequent rulings by this Court have held specifically that failure to object to procedural shortcomings regarding a contempt proceeding results in a waiver of any such error(s) and may not be offered for the first time on appeal. See *Travitzky v. Travitzky,* 369 Pa.Super. 65, 534 A.2d 1081, 1085 (1987); *Fenstamaker v. Fenstamaker,* 337 Pa.Super. 410, 487 A.2d 11, 15 (1985).

Admittedly, Justice Pomeroy's plurality opinion in *Altemose*, joined by Jones, C.J. and Eagen, J., contains verbage which could be read to allow review of a procedural *faux pas* presented for the first time on appeal. However, with the admonition in *Dilliplaine* and its progeny concerning preservation of an issue for review by objection at the appropriate (pre-trial, trial & post-trial) level, we find that the law dictates the course to follow, i.e., we hold the contempt claim of the Appellant waived. Id.; *Travitzky*, supra; *Fenstamaker*, supra.

Accordingly, based on the preceding, the appeal taken from the February 4, 1993, order refusing to modify support payments (No. 829 PHL 1993) is quashed; the appeal from a separate order of February 4, 1993, holding the Appellant in civil contempt (No. 830 PHL 1993) is affirmed.

Orders quashed in part and affirmed in part. Jurisdiction is not retained.