J-S06011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| HELENA CHARLTON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANCOIS A. JOHNSON | : | |
| | : | |
| Appellant | : | No. 1772 EDA 2023 |

Appeal from the Order Entered May 24, 2023
In the Court of Common Pleas of Delaware County Domestic Relations at
No(s):  2007-00131,
ID# 342108911

BEFORE:  DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 24, 2024**

Francois Johnson ("Appellant") appeals from the May 24, 2023 order entered in the Delaware County Court of Common Pleas finding him in contempt for failure to pay child support arrearages and imposing a 90-day term of incarceration with a purge amount of $15,000.00.  He asserts that the trial court erred by excluding certain testimony and by failing to make a finding that, beyond a reasonable doubt, Appellant had the ability to pay the purge amount.  After careful review, we affirm.

**A.**

We glean the relevant factual and procedural history from the trial court opinion and the certified record.  Trial Ct. Op., 9/11/23, at 3-4, 7-8.  Appellant has child support cases pending at six dockets for six mothers of his children ("Mothers"), including Appellee.  His total child support obligation across the

six cases is approximately $2,500 per month, which includes $425 per month to Appellee. He is in arrears on all cases, with arrearages totaling $139,468.31.

On April 24, 2023, Appellant was arrested due to a bench warrant for failure to appear at a contempt hearing. On May 17, 2023, the court held a hearing on Appellant's six open child support matters, including the present case.

During the hearing, Molly Lorentz, one of the Mothers, testified that she had seen pictures of a motorcycle and a white SUV on Appellant's Instagram account, as well as videos of Appellant riding the motorcycle.

Appellant then testified. He explained that he has been attending nursing school since October 2022. He also testified that he receives the following income: (1) a monthly stipend of between $1,742.00 and $2,100.00 from the Department of Veterans' Affairs ("VA") while he attends school,[1] (2) an average of $400.00 per week driving for Uber, and (3) occasional income, "at most" $125.00 per month, from working on motorcycles. N.T. Hr'g, 5/17/23, at 40. He admitted that he was aware of his child support obligations when he started school, but that he chose not to secure full-time employment due to his school schedule. He further testified that his monthly expenses are $1,860.00 for rent and $720.00 for his car note, and that he does not own a motorcycle.

_____

[1] Appellant did not provide documentation at the hearing to establish the precise amount of his monthly VA payment. Trial Ct. Op. at 10.

Appellant also explained that he attempted to re-enlist in the military but could not because he needed his children's birth certificates, which some of the Mothers refused to provide in violation of a court order. However, Appellee objected to this testimony, and the court sustained the objection.

The court did not find Appellant's testimony—particularly his testimony that he did not have other sources of income or own a motorcycle or multiple vehicles—credible. Trial Ct. Op. at 10. The court also noted that Appellant has a history of contempt and failure to make payments unless threatened with contempt or incarceration and that he has not made a "voluntary non-bench warrant or contempt[-]related payment" in the present case since its inception in 2013. Trial Ct. Op. at 8, 10. The most recent payments Appellant had made in this case were (1) the $3,000.00 purge when he was incarcerated for contempt in August 2022; (2) a $600.00 payment the week of his court date in this case; and (3) a $150.00 payment on the morning of his court date in this case.

The court determined that Appellant had willfully failed to comply with the support order, found him in contempt, and ordered him imprisoned for 90 days. It also set a purge amount of $15,000.00, "cumulative for all cases, including the instant matter." Trial Ct. Op. at 2, n.2. The court's contempt order entered on May 24, 2023, noted that Appellant had six outstanding child support cases in total; however, the order lists only the docket number of the present case, 2007-00131, for which the $15,000 purge amount applies.

Appellant did not pay the purge amount and he, thus, remained in custody until August 15, 2023.[2]

**B.**

This timely appeal followed. Both Appellant and the trial court complied with Rule 1925(b). Appellant presents the following issues for our review:

I) Whether the court below erred in sustaining [Appellee's] objection and precluding Appellant's testimony regarding [M]others' failure to comply with a previous court order to turn over birth certificates, since that testimony was relevant and admissible?

II) Whether the court below erred in setting an arbitrary and excessive $15,000 purge amount after confining Appellant for contempt, since the record fails to establish beyond a reasonable doubt that he had the present financial ability to satisfy that release condition, and the court did not make a finding to that effect at the hearing?

Appellant's Br. at 5.

**C.**

Appellant first claims that the court erred in excluding his testimony regarding Mothers' failure to comply with a court order to turn over his children's birth certificates so he could re-enlist in the military. He asserts that that evidence demonstrates that his failure to pay child support was not willful. Appellant's Br. at 12. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Phillips v. Lock*, 86 A.3d

---

[2] Although Appellant is no longer in custody, we "do not regard [this appeal] as moot, since he remains subject to the orders of support and a failure to comply with them might again subject him to contempt proceedings." *Barrett v. Barrett*, 368 A.2d 616, 619 n.1 (Pa. 1977).

906, 920 (Pa. Super. 2014). Absent an abuse of discretion, we will affirm the court's ruling. *Id.* An abuse of discretion is "the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record." *Commonwealth v. Harris,* 884 A.2d 920, 924 (Pa. Super. 2005) (citations omitted). "In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." *Lock*, 86 A.3d at 920 (citation omitted).

Evidence must be relevant in order to be admissible. *Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa. Super. 2003); Pa.R.E. 402. Evidence is relevant if it "logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or. . .supports a reasonable inference or presumption regarding the existence of a material fact." *Freidl*, 834 A.2d at 641 (citation omitted).

For the court to find a party in civil contempt, the "party must have violated a court order." *Childress v. Bogosian*, 12 A.3d 448, 465 (Pa. Super. 2011). Specifically, the court must have proof by a preponderance of the evidence that (1) "the contemnor had notice of the specific order that he [] is alleged to have disobeyed[;]" (2) "the act that constituted the contemnor's violation was volitional[;]" and (3) "the contemnor acted with wrongful intent." *Cunningham v. Cunningham*, 182 A.3d 464, 471 (Pa. Super. 2018). While it is the complaining party's burden to prove noncompliance by a preponderance of the evidence, the "present inability to comply is an

- 5 -

affirmative defense which must be proved by the alleged contemnor." ***Barrett v. Barrett***, 368 A.2d 616, 621 (Pa. 1977).

\*

Appellant argues that evidence about his inability to re-enlist in the military due to Mothers' failure to comply with the order to turn over the birth certificates was relevant to the contempt finding because the willfulness of his failure to pay was at issue, Mothers' failure to turn over the birth certificates prevented him from re-enlisting, and re-enlisting would have allowed the state to garnish his wages to pay his arrearages. Appellant's Br. at 14. He maintains that because the court prevented him from presenting evidence demonstrating that his "inability to make regular support payments was not willful," the court deprived him of a fair trial. ***Id.*** at 14-15. Finally, he maintains that the court committed reversible error because there was "at the very least a reasonable possibility [that] its failure to recognize the relevance of the proffered evidence contributed to the contempt finding." ***Id.*** at 15.

The trial court concluded that this testimony was not relevant to the material issues in the contempt proceeding—Appellant's ability and failure to pay his child support obligations. Trial Ct. Op. at 4. Specifically, it found that there was no evidence that the lack of birth certificates "prevented [Appellant] from all employment, and since ability to pay is not restricted to potential military enlistment, he had not laid any foundation for the relevance of the birth certificates." ***Id.***

Following our review, we conclude that the trial court did not abuse its discretion in determining that this testimony was irrelevant and, thus, inadmissible. The court explained the reasoning for its decision, and its reasoning is supported by the record. Although Appellant claims that Mothers' failure to comply with the court order and his resulting inability to re-enlist in the military were relevant because it indicated that his failure to pay was not willful, the record contains no evidence that Appellant needed his children's birth certificates to secure any other type of employment. Accordingly, Appellant's proffered testimony was irrelevant because it would not have proven that his failure to pay was not willful. The trial court, therefore, properly sustained Appellee's objection to this testimony. This claim, thus, merits no relief.

**D.**

Appellant next challenges the purge amount set by the court. Appellant's Br. at 16-19. We review civil contempt orders for an abuse of discretion. ***Orfield v. Weindel***, 52 A.3d 275, 278 (Pa. Super. 2012). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." ***Childress***, 12 A.3d at 465 (citation omitted).

As punishment for contempt, the court may impose, *inter alia*, a term of imprisonment of up to 6 months, provided that the order specifies a condition that will result in release if fulfilled. 23 Pa.C.S. § 4345(a), (b). When the alleged contemnor presents evidence that he cannot comply with the court order and the court imposes imprisonment, the court should set conditions for

purging the contempt and effecting release from imprisonment with which it is **convinced beyond a reasonable doubt**, from the totality of the evidence before it, the contemnor has the present ability to comply. ***Childress***, 12 A.3d at 465 (emphasis added and citations omitted).

We have held that "a court may not convert a coercive sentence into a punitive one by imposing conditions that the contemnor cannot perform and thereby purge himself of the contempt." ***Travitzky v. Travitzky***, 534 A.2d 1081, 1086 (Pa. Super. 1987). Rather, the trial court must have sufficient evidence to find beyond a reasonable doubt that the contemnor has the present ability to pay the purge amount. ***See***, ***e.g.***, ***id.*** at 1086-87 (finding no proof beyond a reasonable doubt that appellant could presently afford to pay purge amount where there was testimony about her earning capacity and property she owned, but she was unemployed and there was no evidence of valuation of property).

\*

Here, Appellant does not challenge the court's finding of contempt. Rather, he argues that the court failed to make a finding beyond a reasonable doubt that he could afford the purge amount, and instead "confined him without sufficient evidence. . ." that he could presently afford to pay $15,000. Appellant's Br. at 18. He further asserts that "[t]he court's own statements—telling [Appellant] that he would have ninety days to contemplate his decisions—evidence its obvious desire to punish him and not just coerce compliance." ***Id***. at 19.

In addressing this issue, the trial court concluded, beyond a reasonable doubt, that Appellant had the present ability to comply with the court's order to pay $15,000 to purge himself of the contempt.[3]  Trial Ct. Op. at 10.  In determining that Appellant could pay the purge amount, the trial court concluded that Appellant's testimony about the sources of his income was not credible.  *Id.*  In addition, based on the fact that his expenses exceeded his reported income, the court reasonably inferred that Appellant had undisclosed sources of income.  Specifically, the court found that Appellant's monthly VA stipend of between $1,742.00 and $2,100.00 was insufficient to cover even his rent and car note, let alone any additional expenses.  *Id.*  Furthermore, the court did not believe that Appellant's income from working as an Uber driver and occasionally as a mechanic was sufficient to supplement his VA stipend, and thus, did not find Appellant credible when he testified that these were his only sources of income.  *Id.*  The court also did not believe that Appellant did not own other assets, such as a motorcycle, that he could liquidate.  *Id.*  Ultimately, the court concluded that "Appellant's carefree and unobstructed lifestyle combined with his history of paying release or purge amounts upon the issuance of a bench warrant or a finding of contempt

_____

[3] The trial court first concluded that because Appellant did not file notices of appeal at each of the six custody cases, he could not challenge the imposition of the entire purge amount.  Trial Ct. Op. at 9.  Based on our review, we disagree.  As noted above, the order imposing the $15,000.00 purge condition lists only the instant docket number; it does not include the other five cases.  Order of Court-Contempt, 5/17/23, at 1 (unpaginated).  Since Appellant filed his appeal from the order containing this one docket number, we may address Appellant's challenge to the entire purge amount.

supports [the court's] finding that he is in possession of funds, whether through actual income or assets, which he can liquidate to pay the purge amount." ***Id.***

Following our review, we conclude that the trial court properly exercised its discretion in imposing the $15,000.00 purge condition. The trial court identified the evidence on which it based its determination that Appellant had the ability to pay $15,000.00. The totality of the evidence before the trial court—including evidence of Appellant's income relative to his expenses and his history of only making payments when incarcerated or threatened with contempt—enabled it to draw a reasonable inference that Appellant's testimony was not credible and that he had access to funds, either in income or assets, which would allow him to pay the purge amount in this case. The record supports the trial court's findings. Accordingly, we conclude that the trial court did not abuse its discretion in setting the purge amount at $15,000.00. This claim, thus, merits no relief.

**E.**

We conclude that both of Appellant's claims lack merit. Accordingly, we affirm the trial court's order finding him in contempt and imposing the incarceration term and purge condition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/24/2024