J-S17009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWARD MARTIN, | |
| Appellant | No. 243 EDA 2016 |

Appeal from the Judgment of Sentence of January 5, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013191-2014

BEFORE:  OLSON, STABILE AND MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                **FILED APRIL 12, 2017**

Appellant, Edward Martin, appeals from the judgment of sentence entered on January 5, 2016.  We affirm.

The Commonwealth charged Appellant, Shaheed Carroll, and Darnell Woodson with a multitude of crimes related to the assault, robbery, and intimidation of the Victim, T.S. (hereinafter "the Victim").  The trial court ably summarized the underlying facts of this case:[1]

_____

[1] Appellant, Shaheed Carroll, and Darnell Woodson were tried together and the underlying facts with respect to all three defendants are identical.  The trial court did not file an opinion in Appellant's case.  We, therefore, quote the trial court's factual recitation in its opinion filed in Shaheed Carroll's case, as the underlying facts are identical to those in the case at bar.  *See* Trial Court Opinion at *Commonwealth v. Carroll*, 1930 EDA 2016, 1/23/17, at 1-9.

On September 19, 2014, the [Victim] was leaving a friend's house on the 6100 block of Frontenac [Street] in Philadelphia. At that location he was approached by [Shaheed Carroll], along with co-defendants, Darnell Woodson and [Appellant]. The co-defendant, Darnell Woodson[,] made a comment regarding [the Victim] "snitching" about a previous robbery where [the Victim was also victimized]. The co-defendant Woodson then [instigated] a fight between the two. . . . [Appellant then] joined in the fight and both started punching and kicking [the Victim] all over his body. [The Victim] fell to the ground and at that point [Shaheed Carroll] began kicking him. All three defendants then went through [the Victim's] pockets and took from him his cell phone, charger, SEPTA Transpass, headphones, and [$5.00] before running off. [The Victim] called 911 and was able to provide the police information so that his cell phone could be tracked.

Based on the information about [the Victim's] cell phone, police officers were able to track the phone to the area of 5300 Darrah Street. At that location, officers stopped the three co-defendants since they matched the description given by [the Victim]. [The Victim] positively identified each co-defendant as being a participant in the robbery. The items [the Victim] identified as being taken from him by the co-defendants were recovered from their possession.

Trial Court Opinion at ***Commonwealth v. Carroll***, 1930 EDA 2016, 1/23/17, at 2 (internal citations omitted).

Following trial, the jury found Appellant guilty of receiving stolen property, simple assault, intimidation of a witness, robbery, and criminal conspiracy.[2] N.T. Trial, 11/2/15, at 24-25. On January 5, 2016, the trial

---

[2] 18 Pa.C.S.A. §§ 3925(a), 2701(a), 4952(a)(1), 3701(a)(1)(iv), and 903, respectively.

court sentenced Appellant to serve an aggregate term of three to six years in prison for his convictions. N.T. Sentencing, 1/5/16, at 60-61.

Appellant filed a timely notice of appeal and now raises four claims to this Court:[3]

> 1) Did the [trial] court commit error when it permitted Detective Ortiz to give [her] opinion as to the complaining witness's mental state despite having no formal medical training?
>
> 2) Did the [trial] court commit error when it permitted Officer Lewis to read a portion of his written statement because it was improper bolstering and a prior consistent statement?
>
> 3) Did the [trial] court commit error when it denied the defense motion for judgment of acquittal on the charge of intimidation of a witness when the proper charge should have been retaliation of a witness?
>
> 4) Did the [trial] court commit error when it responded to jury question [number two] [(can you tell us what objects were recovered from which of the defendants from the September incident?)] by sending back the property receipt as opposed to instructing the jury that their recollection controls?

Appellant's Brief at 6 (some internal capitalization omitted).[4]

---

[3] The trial court granted Appellant permission to file a Pennsylvania Rule of Appellate Procedure 1925(b) statement *nunc pro tunc*. Trial Court Order, 7/11/16, at 1. Appellant then filed a timely Rule 1925(b) statement and, within his statement, Appellant listed the claims he currently raises on appeal. **See** Appellant's Rule 1925(b) Statement, 7/22/16, at 1-2.

[4] We note that the Commonwealth failed to file a brief in this case despite filing an application for extension of time to file a brief which was granted by order of this Court on November 28, 2016.

Appellant's first two claims on appeal challenge evidentiary rulings made by the trial court. We have explained:

> [Our] standard of review for a trial court's evidentiary rulings is narrow. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013) (internal quotations and citations omitted). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012) (internal quotations and citations omitted). "A party suffers prejudice when the trial court's error could have affected the verdict." *Commonwealth v. Tyack*, 123 A.3d 254, 257 (Pa. Super. 2015) (internal quotations and citations omitted).

Contrariwise, "an erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless." *Commonwealth v. Chmiel*, 889 A.2d 501, 521 (Pa. 2005). Our Supreme Court has held:

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis;* (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so

overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* (internal quotations and citations omitted). "An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict." *Id.* at 528. "If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless. The burden of establishing that the error was harmless rests upon the Commonwealth." *Id.* (internal citations omitted).

First, Appellant claims that the trial court erred "when it permitted Detective Ortiz to give [her] opinion as to [the Victim's] mental state despite having no formal medical training." Appellant's Brief at 11. This claim fails.

Philadelphia Police Detective Erica Ortiz-Griffin interviewed the Victim in the early morning of September 20, 2014, within hours after the Victim was beaten and robbed. During the Commonwealth's re-direct examination of Detective Ortiz-Griffin, the following questions, testimony, exchanges, and objections occurred:

> Q: Okay. . . . [D]id you ask [the Victim] about if he had received prior medical treatment? Is that one of the statements that you asked him?
>
> A: No, it isn't. And to be honest, it's common for complainants, like, to miss stuff unless you specifically ask them.
>
> Q: Okay.
>
> A: Actually, in this case, he was a little off, I would say.
>
> Q: What - -

A: Maybe a little - -

Q: What do you mean by off?

A: Maybe he had a little bit of mental problems.

> [Appellant's Attorney]: I would object to that, Your Honor. It calls for speculation unless she's giving a medical diagnosis.

> [Trial Court]: All right. Well - -

> [Shaheed Carroll's Attorney]: Unless she's an expert in that field, I would join in the objection.

> [Commonwealth]: I'll ask to - -

> [Trial Court]: Sustained in terms of - - you can talk about specific behavior, but certainly - -

> [Commonwealth]: I'll have - -

> [Appellant's Attorney]: Move to strike.

Q: I will have you clarify. Not mental health issues, but what was it about it that seemed off?

A: He just seemed, like, maybe he was, like, delayed a little bit, educationally delayed. I don't know how to say it.

> [Shaheed Carroll's Attorney]: Once again, I would object to saying - -

> [Trial Court]: Say that again.

> [Shaheed Carroll's Attorney]: The same testimony.

A: He just appeared to be a, like, a little slow. He - -

> [Trial Court]: Well, she can describe behaviors, but just not medical - - I mean, what was he doing specifically?

Q: What was he doing specifically?

A: It was really just how he acted. Like, he was, like, slow to respond to stuff, but he was - - I mean, pretty much everybody knows what - - you can tell when someone has problems. You could tell he had some problems.

[Appellant's Attorney]: Again, I would object.

[Shaheed Carroll's Attorney]: Objection.

A: He was having difficulty.

[Trial Court]: You have to describe the behavior. Like, what do you mean?

A: He was, like, slow to answer to stuff. He – pretty much that was it. He just appeared to be slow in answering stuff.

[Commonwealth]: Okay. Thank you.

[Trial Court]: Any recross based on that?

. . .

[Appellant's Attorney]: No, Your Honor.

N.T. Trial, 10/27/15, at 34-36.

On appeal, Appellant claims that the trial court erred in "permitting" Detective Ortiz-Griffin to testify that the Victim "was 'delayed' and had 'mental problems'" because, Appellant claims, such testimony went "beyond the realm of lay opinion and into expert testimony reserved for one with proper medical training." Appellant's Brief at 11-12. Further, Appellant claims that the testimony caused him prejudice because "the jury now viewed [Appellant] and his co-defendant[s] as having attacked someone who had mental health problems." *Id.* at 12.

Appellant's claim fails because the trial court **sustained** Appellant's objections to the detective's testimony that characterized the Victim as having "mental problems" and as having "problems;" further, the trial court sustained Shaheed Carroll's objection to the detective's testimony that declared the Victim was "educationally delayed." *See* N.T. Trial, 10/27/15, at 34-36. Indeed, the trial court continuously instructed Detective Ortiz-Griffin to limit her testimony to "specific behavior" she observed in the Victim and to refrain from testifying as to anything "medical." *See id.* On appeal, Appellant does not claim that the trial court should have done anything differently; as such, Appellant's first claim fails.

Second, Appellant claims that the trial court erred when it "permitted Officer Lewis to read a portion of his written statement because it was improper bolstering and a prior consistent statement." Appellant's Brief at 12. Again, Appellant's claim on appeal fails because the trial court, in fact, sustained his objection.

On the night of the robbery, Philadelphia Police Officer Phillip Lewis encountered Appellant, Shaheed Carroll, and Darnell Woodson and asked the three to stop; Darnell Woodson stopped for Officer Lewis, while Appellant and Shaheed Carroll walked away. The three defendants were later arrested after the Victim arrived on scene and identified the defendants as his assailants. During Officer Lewis' direct testimony, Officer Lewis testified as follows:

Q: And did you provide a statement to Northeast Detectives detailing your account of this incident?

A: I did.

Q: Okay.

[Commonwealth]: If I can have the officer shown what I have marked as Commonwealth Exhibit C-11.

[Trial Court]: C-11.

(Whereupon, Exhibit C-11 was marked for identification).

[Court Officer]: C-11 to the witness.

Q: Officer Lewis, is this your statement that you made that night?

A: It is, yes.

Q: And did you sign the statement?

A: I did.

Q: Officer Lewis, can you please read the question and answer portion of your statement?

[Appellant's Attorney]: I'm going to object.

[Shaheed Carroll's Attorney]: I'll object to that as well.

[Darnell Woodson's Attorney]: I object, yes. He's already testified to the facts, Judge. It just corroborates.

[Shaheed Carroll's Attorney]: It's improper bolstering.

[Trial Court]: For him to just read it, is there something specific?

[Commonwealth]: I mean, I can lead him towards - - I mean, he testified generally. There's more specific

details with the part of the statement. I mean, I can refer him specifically to that portion if it's easier.

[Trial Court]: Was there something, you know - - is he reading because he can't remember? I mean, what's the basis?

[Commonwealth]: The basis of him reading would be, number one, he's indicated the officers that responded to him. I think at this point, he said the police officers responded to him. Then he also detailed the other items that were taken from the specific defendant. He couldn't remember what specific defendant.

[Trial Court]: Well, if there are specific things, it's different.

[Darnell Woodson's Attorney]: She can refresh his recollection.

[Appellant's Attorney]: Right.

[Trial Court]: There's a lot of detail.

[Commonwealth]: Well, I mean, I can have him start with - -

Q: Do you see the first question that you have?

A: The first one?

[Appellant's Attorney]: Judge, here's my - -

[Darnell Woodson's Attorney]: I - -

[Appellant's Attorney]: I want to state my grounds. There's a procedure to be followed. Let's say this is trying to be brought in to refresh [a] recollection, all right? Such as, well, you have to establish certain things including but not limited to that the person doesn't remember. Just to say start reading - - I mean, he's never indicated that there's been any problem with - -

- 10 -

[Trial Court]: Well, he did refer to his notes before.

[Appellant's Attorney]: Okay.

[Commonwealth]: And he did say he didn't remember specifically.

[Trial Court]: Well, specifically, what things? I mean, he . . . [w]hat things[?] - - I think you need to establish what he can't remember and what he's - - what detail he's looking at.

[Commonwealth]: Okay.

Q: Let me ask you this. I mean, you've already testified to it but they're not clear. So let me ask you again. You indicated that officers stopped . . . two of the [defendants]?

A: Two of the [defendants], yes.

. . .

Q: Okay. . . . And then you also indicated that . . . the items were recovered from one of the defendants, but you couldn't remember which one?

A: That's correct.

Q: Okay. Would it help to refresh your recollection to look at your statement to see who, if anybody, had the items on him?

A: Just give me a minute, please.

Q: No problem.

A: Yes. So that defendant was [Appellant].

Q: It was [Appellant]?

A: Yes.

N.T. Trial, 10/27/15, at 86-90.

- 11 -

Appellant did not object further.

Therefore, in this case, the trial court sustained Appellant's original objection to Officer Lewis "read[ing] a portion of his written statement." Appellant's Brief at 12. Further, in the ensuing argument, Appellant acknowledged that Officer Lewis would be permitted to read the statement if a foundation were laid, establishing that Officer Lewis could not remember a detail and that the written statement would refresh his recollection. *Id.* at 87-88 and 89. The Commonwealth then followed the correct procedure and, when Officer Lewis later read from his written statement, Appellant did not object. *Id.* at 89-90. As such, Appellant's claim of error fails.

Third, Appellant claims that the evidence was insufficient to support his conviction for intimidation of a witness or victim. This claim fails.

We review Appellant's sufficiency of the evidence claim under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

- 12 -

Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*) (internal quotations and citations omitted). Further, as our Supreme Court has held, a claim that "the testimony presented to the [fact-finder] was so unreliable and contradictory that the[] verdict could only have been arrived at through speculation and conjecture . . . [is] a challenge to the sufficiency [of the evidence]." *Commonwealth v. Brown*, 52 A.3d 1139, 1156 n.18 (Pa. 2012).

Appellant was convicted of the crime of "intimidation of witnesses or victims" under 18 Pa.C.S.A. § 4952(a)(1). N.T. Trial, 10/28/15, at 142-143; Commonwealth's Information, 12/2/14, at 2. This subsection reads:

A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to: (1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

18 Pa.C.S.A. § 4952(a)(1); *see also* N.T. Trial, 10/28/15, at 142-143; Commonwealth's Information, 12/2/14, at 2.

Within Appellant's brief to this Court, Appellant does not claim that the evidence was insufficient to support his conviction under Section 4952(a)(1). Instead, Appellant claims that the evidence was insufficient to support his

conviction under 18 Pa.C.S.A. § 4952(a)(3) because "[t]here was no evidence that [Appellant] or any co-defendant attacked [the Victim] with the intent to prevent him from testifying in court or providing information to law enforcement." Appellant's Brief at 13-14; *see also* 18 Pa.C.S.A. § 4952(a)(3) ("A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to: . . . (3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge").

Given that Appellant was convicted of "intimidation of witnesses or victims" under 18 Pa.C.S.A. § 4952(a)(1), Appellant's claim on appeal immediately fails. Moreover, and regardless, the evidence was clearly sufficient to support Appellant's conviction under Section 4952(a)(1), as the Victim testified that Appellant and the co-defendants beat and robbed him for "snitching" about a prior time that the Victim was robbed. N.T. Trial, 10/26/15, at 108-109. This testimony is clearly sufficient to support a finding that Appellant "intimidate[d] or attempt[ed] to intimidate [the Victim]" from "[r]efrain[ing] from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of" **both the prior crime and the current crime**. 18 Pa.C.S.A. § 4952(a)(1). Appellant's claim on appeal fails.

- 14 -

Finally, Appellant claims that the trial court erred in its response to Jury Question Number Two.  This claim is waived.

During jury deliberation, the jury submitted the following question to the trial court:  "Can you tell us what objects were recovered from which of the defendants from the September incident?"  N.T. Trial, 10/29/15, at 4. The trial court responded to the question by permitting the jury to have possession of the Commonwealth's Exhibit C-12 – which had been admitted into evidence at trial.  The exhibit is not included in the certified record. However, from the trial testimony, the exhibit was apparently a property receipt that was prepared by Philadelphia Police Officer Christopher Lewis. N.T. Trial, 10/27/15, at 113.  The only evidence in the certified record that Appellant points us to regarding Exhibit C-12 is at pages 112 to 114 of the October 27, 2015 trial transcript.  The testimony was as follows:

> Q: Okay.  And once [the Victim] positively identified the three defendants at the bar of the Court, did you, in fact, then search the males?
>
> A: That is correct.
>
> Q: And can you tell the ladies and gentlemen of the jury what happened when you searched the males?
>
> A: From [Appellant], we recovered - - well, we took out a charger, a headset, a transpass, a cell phone, and an iPhone and one [$5.00] bill, at which time [the Victim] IDed as being the stuff that was stolen from him.
>
> . . .
>
> Q: Okay.  And what, if anything, did you do with those items?

A: I - - after the defendant was arrested, I placed the property receipt - - I put it on a property receipt. I'm sorry. I have to look at my notes. The property receipt was 3165281.

Q: Now, at that point, were all three defendants arrested?

A: That's correct.

Q: Okay.

[Commonwealth]: If I can show Officer Lewis what has been previously marked Commonwealth Exhibit C-12.

[Trial Court]: C-12.

(Whereupon, Exhibit C-12 was marked for identification).

[Court Officer]: C-12 to the witness.

A: Yes, ma'am. This is the property receipt.

Q: And, Officer Lewis, please explain to the ladies and gentlemen of the jury what exactly a property receipt is and why you would [] create a property receipt.

A: A property receipt is when police collect evidence, we have to put it on some type of paper so a trace - - a paper trace. If I recover anything - - if something gets stolen from you and the police recover it, we have some way of showing that we did recover the items. At times, we would give them back or it would be held for evidence. So a property receipt is . . . an inventory of what was taken from the complainant and what we recover sometimes from a defendant.

Q: And, Officer Lewis, what, if anything did you do with the property that you placed on a property receipt?

A: After we placed it on the property receipt, I got the defendant to sign that everything I took from him was on

- 16 -

this property receipt, which he did, and then we returned it to the owner.

. . .

Q: Okay. And do you see [the Victim's] signature on this property receipt?

A: Yes.

Q: Okay.

A: He signed it saying that that was his property.

N.T. Trial, 10/27/15, at 112-114.

Within Appellant's brief to this Court, Appellant claims that the trial court should not have permitted the jury to have possession of Exhibit C-12 and should have simply responded to the jury's question by "instruct[ing them] that their memory of the evidence controls and they should rely on [that] in making their determination." Appellant's Brief at 15. Appellant claims that "[t]he prejudice [that he] suffered was that it was his name listed at the top of property receipt #3165281 under the caption 'From Whom Taken.'" *Id.*

Yet, since Appellant has failed to include Exhibit C-12 in the certified record and since the trial testimony does not give this Court a clear understanding of the exhibit, this Court cannot properly analyze Appellant's claim of error. Therefore, Appellant's final claim on appeal is waived. *Smith v. Smith*, 637 A.2d 622, 623-624 (Pa. Super. 1993) ("First, it is black letter law in this jurisdiction that an appellate court cannot consider anything which is not a part of the record in the case. Second, it is the responsibility

of the Appellant to supply this Court with a complete record for purposes of review.  Third*,* although no reproduced record has been offered by the Appellant to remedy the deficiency in the official record, we would note that reproduction of the record is not an acceptable substitute for the original, certified record.  Fourth, a failure by an Appellant to [e]nsure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes a waiver of the issue(s) sought to be examined") (internal citations and italics omitted).

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2017