J-S26017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KRYSTAL R. BEHAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN M. BEHAN | : | |
| | : | |
| Appellant | : | No. 504 MDA 2022 |

Appeal from the Order Entered February 8, 2022
In the Court of Common Pleas of York County Domestic Relations at
No(s):  01166 SA 2021, PACSES No. 696301095

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                **FILED:  AUGUST 29, 2022**

Steven M. Behan (Father) appeals from the order[1] entered in the York

County Court of Common Pleas determining his net monthly earning capacity,

---

[*] Former Justice specially assigned to the Superior Court.

[1] The February 8, 2022, order on appeal directed Father to pay child support, spousal support, and arrears.  **See** Order, 2/8/22.  However, it is well-settled that "[a] spousal support order entered during the pendency of a divorce is not appealable until all claims related to the divorce action are resolved." **Deasy v. Deasy**, 730 A.2d 500, 502 (Pa. Super. 1999).  Because it appeared from the record that no divorce decree had been entered, and the parties' economic claims were outstanding, this Court issued Father a *per curiam* Rule to Show Cause "as to the finality and appealability of the February 8, 2022 order as it relate[d] to spousal support[.]"  Order, 5/5/22.  Father filed a timely response in which he acknowledged that the divorce case was ongoing. **See** Father's Response to Rule to Show Cause, 5/16/22, at 2 (unpaginated). Thereafter, on May 19, 2022, this Court entered an order directing that "**only** the portion of the [February 8th] order with regard to **child support**" would be referred to this panel for disposition.  Order, 5/19/22.  Thus, our review is limited to the trial court's child support award.

and directing him to pay Krystal R. Behan (Mother) $683.46 per month in child support. On appeal he argues the trial court abused its discretion by: (1) imputing to him a net monthly earning capacity of $4,223.28; (2) considering his income listed in a 2018 pre Covid-19 pandemic bankruptcy document to determine his earning capacity; and (3) failing to consider Mother's purported supplemental income. For the reasons below, we affirm.

The relevant facts and procedural history underlying this appeal are as follows. The parties were married in May of 2001 and separated nearly 20 years later, in March of 2021. **See** Mother's Complaint for Support, 9/8/21, at 1. The parties opened a gym together in 2014.[2] **See** N.T., De Novo H'rg, 2/3/22, at 4. On September 28, 2021, Mother filed a pro se complaint seeking spousal support.[3] **See id.** She filed a second pro se complaint on November 22nd, seeking child support for the parties' son (Child), born in April of 2004, who was 17 years old at the time of filing. **See** Mother's Complaint for Support, 11/22/21, at 1. Following a domestic relations conference on December 22, 2021, Father was ordered to pay Mother $660.49 per month in support — $63.58 for spousal support, $535.91 for child support, and $61.00

_____

[2] Mother's counsel informed the trial court that the gym "will be considered marital property" in the equitable distribution proceedings. N.T. De Novo H'rg at 4-5.

[3] Although the petition appeared to also seek child support, the names of the parties' two children were crossed out. **See** Mother's Complaint for Support, 9/8/21, at 1. One of the children was listed as 19 years old. **Id.**

in arrears. Order, 12/22/21, at 1. The court determined Father's net monthly income was $2,681.43, and Mother's net monthly income was $2,022.61. *Id.*

On January 11, 2022, Mother filed a timely demand for a hearing *de novo*. *See* Pa.R.C.P. 1910.11(f)-(i). She asserted that while Father claims "he only makes $24,000 per year[, she] know[s] he makes approximately $80,000" per year, noting "[t]hat's what he tells everyone and claims when he app[lies] for loans." Mother's Demand for Hearing De Novo, 1/11/22. The trial court conducted a hearing *de novo* on February 3, 2020. Both Mother and Father appeared with counsel.

At the hearing, Mother's counsel provided the court with a "Chapter 7" statement the parties filed in 2018 as part of a joint bankruptcy proceeding, which indicated Father was earning $5,500.00 per month, while Mother earned $417.17 per month. N.T. De Novo H'rg at 9, 15. Mother argued that Father's "earning capacity should be higher in that the income he's reporting on his taxes is likely not the income of what he's taking home" from his business, which is the gym the parties opened in 2014. *Id.* at 3-4. Mother emphasized that the parties' joint tax returns indicated Father earned zero income in the years 2015, 2016, and 2019, and only $15,512.00 in 2014, $20,649.00 in 2017, and $10,996.00 in 2018. *See id.* at 5-6. When the court questioned counsel as to whether Mother lied on the joint tax returns, it noted that Mother was "nodding yes that she lied[,]" and the trial court commented, "It's interesting to admit that in court." *Id.* at 7.

Although Father's counsel indicated he was not provided with the bankruptcy document prior to the hearing, counsel did not object to its admission. *See* N.T. De Novo H'rg at 10, 14. When the court inquired whether Father acknowledged that he signed the document, counsel stated:

> When I had showed him that this morning to refresh his recollection, his indications are that this is essentially the preliminary documentation that is filed in a bankruptcy and those numbers are rough estimates of what was earned [in] those months and not based on any specific documentation that was provided to that attorney.

*Id.* at 14. However, while counsel described the income numbers as a "rough estimate," the court noted that the document had "specific pay check details and earnings outlined therein." *Id.*

At the conclusion of the hearing, the trial court found Father's assertion that he was "paying himself $11 per hour to manage his own business . . . just incredible." N.T. De Novo H'rg at 16. Moreover, although Father asserted that his income was affected by COVID-19 restrictions, the court noted that Father would have been "entitled to COVID relief money." *Id.* Therefore, the court determined Father's earning capacity was what he had "the ability to earn in 2018." *Id.* On February 8, 2022, the trial court entered the order on appeal, directing Father to pay Mother $1,245.50 per month in support — $449.04 for spousal support, $683.46 for child support, and $113.00 for arrears. Order, 2/8/22 at 1. The court determined father's net

monthly income was $4,223.28, and Mother's net monthly income was $2,022.61. *Id.* Father subsequently filed this timely appeal.[4]

Father raises the following three issues for our review:

I. Whether the trial court abused its discretion by imputing a monthly income of $4,223.28 on [Father?]

II. Whether the trial court abused its discretion by basing [Father's] income off of a bankruptcy document from 2018, that was not previously averred in the request for *de novo* [hearing] nor exchanged between counsel prior to the *de novo* [hearing], for an income amount that was pre-pandemic, instead of basing the income off of the most recent tax return records that were provided by [Father?]

III. Whether the trial court abused its discretion by failing to take into account the supplemental income of [Mother?]

Father's Brief at 4.[5]

When reviewing a child support order, we must bear in mind:

The amount of a support order is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground.

*Johnson v. Johnson*, 222 A.3d 787, 789 (Pa. Super. 2019) (citation omitted).

---

[4] Although not directed to do so by the trial court, on March 10, 2022, Father filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed an opinion on March 16, 2022.

[5] We have reordered Father's issues for purposes of disposition.

"The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses." ***J.P.D. v. W.E.D.***, 114 A.3d 887, 889 (Pa. Super. 2015) (citation omitted). A trial court determines a parent's support obligation primarily by consideration of their "actual financial resources and their earning capacity." ***Woskob v. Woskob***, 843 A.2d 1247, 1251 (Pa. Super. 2004).

> Although a person's actual earnings usually reflect [their] earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering [their] age, health, mental and physical condition, training, and earnings history.

***Id.*** (citations omitted).

In his first two issues, Father challenges the trial court's determination that he had a net monthly earning capacity of $4,223.28, based upon the income he reported in a pre-pandemic 2018 bankruptcy filing, a document that was not provided to him before the hearing. ***See*** Father's Brief at 10. Father emphasizes that the initial support order entered in December of 2021 — which determined his net monthly income was $2,681.43 — was "more reflective of [his] current income" because it was calculated using his last three years of tax returns, "with credits added back in as income for the vehicle, meal, and travel that had previously been paid for by [his] company." ***Id.*** at 11. He insists the $66,000 yearly income listed in the bankruptcy filing is not what he could now "realistically earn under the circumstances, including the current pandemic, and . . . his age, health, mental and physical condition

and training." *Id.* at 11-12 (citation omitted). Moreover, because the bankruptcy document was not provided to his counsel before the hearing, he notes he did not have the opportunity "to bring rebuttal documentation[.]" *Id.* at 12.

Father maintains the "most glaring concern" with the 2018 bankruptcy document is that it was filed two years prior to the COVID-19 pandemic, at a time when he had supplemental income working as a personal trainer. Father's Brief at 13. He insists that "[i]t is manifestly unreasonable to believe that [he], as the owner of a private gym, could be held to the same income that he was making two years prior to the COVID-19 pandemic." *Id.* Furthermore, while the court noted that Father could have received COVID relief money for his business, "at no point was he able to present details about whether he applied for such relief, any terms that were surrounding that income, and what that income could be applied towards." *Id.* at 13-14. Therefore, he contends:

> [T]he trial court abused its discretion by basing [his] income off a Bankruptcy Petition from 2018, that was not previously averred . . . nor exchanged between counsel prior to the de novo [hearing], for an income amount that was pre-pandemic, instead of basing the income off the most recent tax returns that were provided by Father.

*Id.* at 14. We conclude no relief is warranted.

First, to the extent Father challenges the trial court's consideration of the bankruptcy document because it was not exchanged prior to the hearing, we note counsel did not object to the admission of the document on that basis.

Accordingly, that claim is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Second, Father does not dispute the authenticity of the bankruptcy document. Rather, he indicated to his attorney that it was "essentially the preliminary documentation that is filed in a bankruptcy and [the] numbers are rough estimates of what was earned . . . and not based on any specific documentation that was provided to [the bankruptcy] attorney." N.T. De Novo H'rg, at 14. The court responded, however, that Father's claim was belied by the document itself, which has "specific pay check details and earnings outlined therein." **Id.** Therefore, the trial court acted well within its discretion when it determined Father's contention that he was earning "only $24,000 gross [was] just incredible[,]" and that the bankruptcy documentation provided a more realistic depiction of his earning capacity. **See** Trial Ct. Op. at 16.

Furthermore, to the extent Father complains that the court failed to consider the fact that his business – and earning capacity — has been negatively affected by the COVID-19 pandemic, we note that Father neglected to provide any documentation, absent his tax returns, to support this. Indeed, although he now claims he was unable to provide any details about his purported receipt of COVID-19 relief money, the record of the *de novo* hearing belies his claim. Father made no attempt to argue that he did not receive any COVID-19 funds, or that his use of those funds was restricted. Thus, he

cannot now assert he was precluded from doing so. As such, Father's first two claims warrant no relief.

In his third and final claim, Father argues the trial court abused its discretion "by failing to take into account the supplemental income of" Mother. Father's Brief at 14. He insists that he indicated "[m]ultiple times during the December 2021 support conference" that Mother "had supplemental income through her buy and resell company[,]" but that the hearing officer "refused to consider this issue[.]" *Id.* at 14-15. Father claims he attempted to raise the issue before the trial court "off-record during [a] break[,] but the trial court was not interested in any discussion of that topic." *Id.* at 15. Although he recognizes that this Court "cannot consider facts not in evidence[,]" Father states that it "is not due to a lack of effort" by him. *Id.* (citation omitted). Thus, he contends the trial court should have considered Mother's purported supplemental income in determining her earning capacity.

It is well-settled that neither a trial court, nor an appellate court, may consider evidence or facts that are outside the record. *See Conner v. Conner*, 217 A.3d 301, 313 (Pa. Super. 2019); *Smith v. Smith*, 637 A.2d 622, 623 (Pa. Super. 1993). Our review of the *de novo* hearing reveals no mention of any purported supplemental income of Mother. The fact that Father may have raised the issue during the December 2021 domestic relations conference and before the trial court **off-the-record**, is of no moment. The conference was not transcribed, and Father had an obligation

to produce evidence of Mother's purported additional income **during** the *de novo* hearing.  Because he did not do so, his claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/29/2022