J-S01006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1048 MDA 2018 |

Appeal from the Decree Entered May 25, 2018
In the Court of Common Pleas of Northumberland
County Orphans' Court at No(s):  35 year of 2017

BEFORE:   PANELLA, P.J., MURRAY, J., and PELLEGRINI[*], J.

MEMORANDUM BY PANELLA, P.J.                    **FILED MARCH 01, 2019**

J.S. ("Father") appeals from the decree that involuntarily terminated his parental rights to his daughter, A.S. ("Child"), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2938.[1]  We affirm.

Child became known to Perry County Children and Youth Services ("Perry County CYS") in February of 2016, when Perry County CYS received a General Protective Services report alleging that Child and her brother, M.S., were acting out sexually between themselves.  **See** N.T., Termination Hearing, 5/25/18, at 16-17.   Child Protective Services ("CPS") reports were received

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The court also involuntarily terminated the parental rights of Child's mother, L.S. ("Mother").   Mother did not appeal from the decree involuntarily terminating her parental rights to Child, nor has she participated in this appeal.

in late April 2016 and early May 2016. *See id.* at 16. The reports involved allegations of sexual abuse. *See id.* The children subsequently disclosed sexual abuse perpetrated against them by Father and Mother. *See id.* at 20-22. The CPS report determined Father's abuse of Child was indicated for involuntary deviate sexual intercourse, rape, and sexual assault.[2] *See id.* at 17. Father did not file an appeal. *See id.* at 19.

Pennsylvania State Trooper Jessica Snyder, the main investigator for the criminal investigation of Father, testified that the investigation is ongoing and charges will be filed when the children are an appropriate age. *See id.* at 11-12. While the trooper did not want to disclose the specific charges being considered, she testified that they would be "some higher end sexual assault charges." *See id.*

During the investigation, Child was placed in kinship foster care with E.S., Child's paternal aunt, in March of 2016. *See id.* at 30-32. In August of 2016, E.S. reported that Child "attempted to act out sexually" with her son, who is one year older than Child. *See id*., at 31. Due to this, E.S. determined she could no longer care for Child. *See id*.

Accordingly, E.S. brought Child to Northumberland County Children and Youth Services ("CYS") in August of 2016. *See id.* at 8, 31, 37. The court

_____

[2] A county agency concludes a report of child abuse is "indicated" if the "agency determines that substantial evidence of the alleged abuse by a perpetrator exists[.]" 23 Pa.C.S.A. § 6303(a). A person determined to be a perpetrator of child abuse in an indicated report must appeal the determination within 90 days of receiving notice of the determination. *See* 23 Pa.C.S.A. § 6341(a)(2).

adjudicated Child dependent on September 2, 2016. *See id.* at 9. At the adjudication hearing, the court suspended Father's and Mother's visitation with Child. *See id.* In April of 2017, the court changed Child's permanency goal to adoption. *See id.* Father did not appeal the order suspending his visitation with Child, nor did Father appeal the order changing Child's permanency goal to adoption. *See id.* at 10.

From August to November of 2016, CYS had no contact with Father, other than Father leaving voicemails. *See id.* at 37-39. From November to February of 2017, Father had four phone calls with CYS. *See id.* at 40-44. During those calls, the caseworker encouraged Father to comply with his family service plan goals, and encouraged Father to send Child letters, cards, and gifts. *See id.* at 44. Father did not send Child anything. *See id.* Father called the caseworker twice in August 2017 and informed the caseworker he was living in a homeless shelter in Florida. *See id.* at 52. The caseworker attempted to review Child's permanency plan with Father. *See id.* However, Father only wanted to complain about his criminal case. *See id.*

On August 7, 2017, CYS filed petitions to involuntarily terminate the parental rights of Father and Mother. The court held a hearing on the petitions, where CYS presented the testimony of Alison Milbrand, a paralegal for CYS; Pennsylvania State Trooper Jessica Snyder; Michelle Carlson, a caseworker with Perry County CYS; E.S., Child's former kinship foster care provider; Kacie Burk, a CYS intake caseworker; and Jill Snyder, a CYS supervisor. Mother attended the hearing but did not testify. Father did not

appear for the hearing; however, Father was represented by counsel at the hearing.[3] On May 25, 2018, the orphans' court entered the decree involuntarily terminating Father's parental rights.[4] Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by entering an order on May 25, 2018 involuntarily terminating the parental rights of the natural father, where Perry County [Children] and Youth Services did not comply with a court order to provide discovery to Northumberland County Children and Youth Services and to natural father?

2. Whether the trial court erred/abused its discretion in sustaining Northumberland County Children and Youth's objection to natural father's counsel's line of questioning on natural father's indicated report of sexual abuse against minor child?

Father's brief at 6 (unnecessary capitalization and suggested answers omitted). Father does not directly challenge the orphans' court's application

_____

[3] Father informed counsel that he did not want to participate in the hearing. *See id*., at 6.

[4] We briefly address, *sua sponte*, the representation of counsel for Child. *See In re: K.J.H.*, 180 A.3d 411, 412-14 (Pa. Super. 2018). Attorney Ann Targonski appeared at the hearing as legal counsel for Child. *See In re T.S.*, 192 A.3d 1080, 1087 (Pa. 2018) (stating that, pursuant to 23 Pa.C.S.A. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for his or her legal interests, which our Supreme Court has defined as the child's preferred outcome). Child also had the benefit of a guardian *ad litem* at the hearing. The guardian *ad litem* and legal counsel both argued in favor of termination. *See* N.T., 5/25/18, at 53, 55.

of the Adoption Act. Rather, he raises two challenges to the procedure utilized in terminating his parental rights.

In Father's first issue, he contends "the trial court erred and/or abused its discretion by terminating his parental rights when Perry County Children and Youth failed to comply with an order compelling pretrial discovery to the natural father." Father's brief at 10. Father claims that Perry County CYS was in contempt of a Northumberland County judicial order dated October 6, 2017, that ordered Perry County CYS to provide complete discovery to Father. *See id.* at 11. Father asserts that he was prejudiced by the lack of complete discovery, and that no evidence was produced by Perry County CYS showing that Father received notice of the indicated report. *See id.*

Counsel for Father acknowledges that, in February 2018, he traveled to Perry County CYS's solicitor's office to view any documentation regarding Child. *See id.* at 12. Counsel was able to view the documentation at the site, but was unable to make copies of the documents. *See id.* Counsel claims that he did not see an additional interview, produced in April 2018, in the Perry County CYS file. *See id.* Father concludes that the "trial court erred and/or abused its discretion by terminating his parental rights where his ability to protect his parental rights was prejudiced by the failure of Perry County Children and Youth to abide by a court order to provide complete discovery." *Id.*

At the termination hearing, Father's counsel summarized his position as follows:

> I think Perry County, in this matter, in regard to refusing to turn over the documentation they have, has been in contempt of this [c]ourt's [o]rder, and I would like to just note for the record that because of that, and because I was never completely able to ascertain whether or not [Father] received service for his indicated report--although I would not represent him in appealing that indicated report--I just want to note for the record that even though [Father] is not here today, that I am unaware if there is still additional discovery left to be provided in this case."

***See*** N.T., 5/25/18, at 54-55.

As an initial matter, the order that Father claims compelled Perry County CYS to produce their file regarding Child is not contained in the certified record. Rather, it is included only in Father's reproduced record, and was entered in the dependency action regarding Child, not the termination action.[5] Our case law is well settled that any document which is not part of the official certified record is considered to be non-existent; the deficiency may not be remedied by including it in the reproduced record. ***See generally***, ***Commonwealth v. Preston***, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*).

Further, our examination of the record reveals that Father failed to appropriately raise Perry County CYS's alleged non-compliance with the prior discovery order before the orphans' court, and Father's failure to appropriately

---

[5] The parties entered into a stipulation to incorporate the dependency record into the termination record. ***See*** N.T., 5/25/18, at 10. However, the dependency record is not contained within the certified record.

- 6 -

raise this issue results in the waiver of this claim. **See Fillmore v. Hill**, 665 A.2d 514, 516 (Pa. Super. 1995) ("Failure to timely object to a basic and fundamental error . . . will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. The principle [*sic*] rationale underlying the waiver rule is that when an error is pointed out to the trial court, the court then has an opportunity to correct the error."); **Smith v. Smith**, 637 A.2d 622, 626 (Pa. Super. 1993) ("Appellant's failure to object to the court's noncompliance with the procedural [requirements] constituted a waiver of his [issue on appeal].").

Here, Father failed to timely raise Perry County CYS's purported non-compliance. Indeed, the only reference to the Perry County CYS records contained in the certified record is in a motion for continuance filed on December 1, 2017, wherein Father's counsel indicated he was provided with "discovery previously in the possession of Perry County Children and Youth. . . ." **See** Motion for Continuance, 12/1/17, at ¶¶ 5-7. Counsel noted that the documentation exceeded 300 pages and that counsel was awaiting a release from Father to review unreleased forensic interviews. **See id.** The court granted the continuance. There is no indication that Father raised any further issue regarding Perry County CYS's purported non-compliance until the termination hearing. Compounding this issue is Father's inability to identify what, if anything, Perry County CYS failed to produce, acknowledging at the

- 7 -

hearing: "I am unaware if there is still additional discovery left to be provided in this case." N.T., 5/25/18, at 55.

Because the order in question is not contained in the certified record, pertains to the dependency case rather than the termination action, and Father failed to timely seek an order for enforcement of the prior discovery order against non-party Perry County CYS, we conclude that Father has waived his first issue.

In his second issue, Father asserts the orphans' court erred or abused its discretion in sustaining the objection of CYS regarding Father's attempts to question witnesses about the indicated report of sexual abuse. *See* Father's brief at 12. Father claims that cross-examination regarding his indicated report should have been permitted in light of the differing evidentiary standards involving the indicated CPS report and the termination of his parental rights. *See id.* at 13. Further, while Father acknowledges that he did not appeal the indicated report, he argues that the substance of the report was presented by CYS at the termination hearing, and Father's counsel was not able to adequately cross-examine witnesses on the indicated report. *See id.*

"Questions concerning the relevancy of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion." *Sprague v. Walter*, 656 A.2d 890, 907 (Pa. Super.

1995), (citation omitted). Additionally, the standard of review of a trial court's admission or exclusion of evidence is well established and very narrow:

> These matters are within the sound discretion of the trial court, and we may reverse only upon a showing of abuse of discretion or error of law. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, [t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Jacobs v. Chatwani*, 922 A.2d 950, 960 (Pa. Super. 2007), (citation omitted). Relevant evidence is evidence "which tends to make the existence or non-existence of a material fact more or less probable." *Commonwealth v. Dillon*, 925 A.2d 131, 136 (Pa. 2007) (citations omitted).

Although Father asserts that he was prevented from effectively cross-examining witnesses regarding the indicated report of child abuse, the record contradicts Father's assertion. Father's counsel sought to question Perry County CYS caseworker Michelle Carlson regarding Father's indicated CPS report. After Carlson testified that she determined that the report was indicated, counsel asked whether she reviewed a medical evaluation of Child that revealed "no physical evidence" of abuse. N.T., 5/25/18, at 25.

Carlson, who had already testified regarding the abuse Child disclosed, informed Father's counsel that she did not recall what the medical evaluation of Child revealed. Counsel asked "[i]f I were to tell you that there was no physical injuries that were found, does that --", at which point CYS's counsel

objected on the ground that counsel was attempting to re-litigate the indicated report. *See id.* The court sustained CYS's objection. Further, after Carlson testified that she sent information regarding the indicated report to Father through both regular mail and certified mail, the court sustained an objection to a follow-up question regarding whether the certified mail came back signed. *See id.* at 26-27.

We conclude that the orphans' court did not abuse its discretion in limiting Father's cross-examination of Carlson. Father's proposed cross-examination of Carlson was not directed towards the facts revealed by Carlson's testimony, namely that Child disclosed sexual abuse by Father. Rather, Father sought to assert that he had not been served with documents, and further sought to question Carlson regarding how the purported lack of physical evidence would change her conclusion that the CPS report was indicated. These subjects were not directly material to the determination of whether Child was without essential care sufficient to justify termination of Father's parental rights. Therefore, the orphans' court did not abuse its discretion in limiting Father's cross-examination.[6]

---

[6] Moreover, any error would be harmless. *See Schuenemann v. Dreemz, LLC,* 34 A.3d 94, 99 (Pa. Super. 2011) ("[Evidentiary] rulings must be shown to have been not only erroneous but also harmful to the complaining part[y]."). The evidence demonstrated that Child and her sibling reported sexual abuse perpetrated by Father. Father's visitation was halted, and Father's contact with CYS over nearly two years consisted of voicemails and

For the foregoing reasons, we affirm the orphans' court's decree involuntarily terminating Father's parental rights to Child.

Decree affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>03/01/2019</u>

---

calls wherein Father complained about the status of the criminal case against him.

The orphans' court noted that "Father's complete absence in this child's life. . ." supported termination of his parental rights. Orphans' Court Opinion, 8/20/18, at 3. Father's sexual abuse of Child, and his inaction following Child's removal, overwhelmingly supported a finding that Father's "continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for h[er] physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." **See** 23 Pa.C.S.A. § 2511(a)(2). Similarly, the testimony clearly established that there is no healthy or beneficial bond between Child and Father, and that termination of Father's parental rights meets Child's needs and welfare pursuant to 23 Pa.C.S.A. § 2511(b). **See** N.T., 5/25/18, at 51 (noting that Child has no bond with Father and has never even mentioned Father.).