J-A13031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF JENNIE P. GRADOS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: STEVEN P. GRADOS | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1175 WDA 2023 |

Appeal from the Decree Entered September 15, 2023
In the Court of Common Pleas of Fayette County Orphans' Court at
No(s): 26-19-0832

BEFORE: OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: AUGUST 6, 2024**

Steven P. Grados ("Appellant") appeals *pro se* from the decree entered in the Court of Common Pleas of Fayette County Orphans' Court on September 15, 2023, which confirmed the final account of the estate of Jennie P. Grados and directed distributions in accordance with the last will and testament of the decedent.[1]  In light of Appellant's failure to ensure this Court received a complete record necessary for meaningful appellate review, and due to the substantial defects in his brief, we dismiss this appeal.

The orphans' court summarized the factual and procedural history of this matter as follows:

> The decedent, Jennie P. Grados[ ("Decedent")], executed a last will and testament dated March 12, 2009.  She died on

---

[1] We note that this is Appellant's third appeal in this case.  His first and second appeals were filed at Nos. 810 WDA 2021 and 1311 WDA 2022, respectively, and are discussed further *infra*.

October 28, 2019. An estate was opened on November 8, 2019[ (the "Estate")], at which time Kathy M. Hawker [("Kathy")] and Jennifer L. Russo [("Jennifer")] were appointed as co-executrixes by the [Office of the] Register of Wills. Prior to Decedent's death, [Kathy] and [Jennifer] had also been agents under a durable power of attorney [("POA")] … dated March 12, 2009. The beneficiaries of the Estate are Decedent's four children[:] Steven P. Grados (Appellant)[;] co-executrices, Kathy … and Jennifer…[;] and Michael F. Grados [("Michael")].

Though Appellant filed a "Petition to Contest the Will of Jennie Grados" on September 15, 2020, he did not actually challenge the validity of the 2009 will [or] the 2009 [POA]. Rather, Appellant's principal objections concern[ed] certain real estate transfers, contractual arrangements, expenditures, accountings, and the disposition of his personal property from approximately 2017 through … Decedent's death in 2019.

From 1998 until 2017, Decedent resided in her own home on Orchard Avenue in Belle Vernon, Westmoreland County. Decedent also owned a farm in Fayette County[,] which she conveyed to … Kathy [and her husband, William George Hawker,] by deed dated July 18, 2017. On or about August 21, 2018, Decedent's Orchard Avenue home was also sold. Prior to the sale of the home, the parties arranged for Michael … to remove any personal property belonging to Appellant, as Appellant was incarcerated at the time.[6] After the sale of her home and until the time of her death, Decedent resided with [Kathy] and [Jennifer], alternating on a regular schedule between the two homes.

[6] [Appellant] testified [at] the August 31, 2022[] hearing that he was incarcerated from August of 2017 through early 2020. [Appellant], a former Pennsylvania State Trooper, was convicted on charges of mail fraud and forging a federal judicial order.

In 2017, Michael … filed a petition for appointment of a guardian in the Orphans' Court [Division of the Court] of … Common Pleas of Westmoreland County, Pennsylvania. That court conducted a hearing on the petition on October 16, 2017, where [a] neurologist[,] Dr. Richard Kasdan[,] testified [as] to an examination of Decedent he conducted on October 10, 2017.[7] After the hearing, all four parties reached an agreement in the guardianship matter in Westmoreland County, which was memorialized by an order of court dated November 2, 2017.[8] Per

- 2 -

this order, the Petition to Adjudicate Incapacity and for the Appointment of an Emergency Guardian of the Person and Estate of Jennie P. Grados was dismissed with prejudice.  That court did not make any finding of incapacity and no guardian was appointed.  Under other terms of the order, the farm property that had been conveyed to Kathy … and her husband was conveyed to the four siblings as tenants in common, and the estate of Jennie Grados reimbursed the Hawkers the $28,000 purchase price.[9]  [Kathy and Jennifer], as agents under the [POA] dated March 12, 2009, were further ordered to file an annual accounting of all transactions of Jennie Grados with the [Office of the] Register of Wills … of Westmoreland County.  [Kathy and Jennifer] retained L. Christian DeDiana, Esq., a licensed Pennsylvania attorney (also certified as an "elder care" attorney) and certified public accountant, to prepare these annual accounts in compliance with the Westmoreland County court's order.

[7] A transcript of D[r.] Kasdan's testimony from the Westmoreland County hearing was filed with the Fayette County Clerk of Courts Office on October 20, 2022, as part of the exhibits from the August 31, 2022[] hearing in Fayette County, under objection from counsel for the Estate.

[8] The court notes in the order that the parties reached an agreement and placed the same on the record, with the verbal consent of [Appellant] expressly provided to his brother, Michael….

[9] As Jennie Grados was still alive at the time of this order, the estate referenced was in respect to the guardianship proceedings, and not the Estate opened after her death in Fayette County.

In or around February [of] 2019, DeDiana met with Decedent, [Kathy], and [Jennifer] to discuss Decedent's desire to compensate [Kathy] and [Jennifer] for [her] living expenses and for the care [Kathy] and [Jennifer] were providing to [her] while she resided in their homes.  DeDiana prepared two Lease Agreements and two Family Care Agreements, one of each for [Kathy] and [Jennifer].  The Lease[ Agreement]s were dated February 12, 2019, and the Family Care Agreements were dated April 3, 2019.  The annual account prepared by DeDiana for the period [of] November 2, 2018[,] through November 12, 2019, included payments to [Kathy and Jennifer] pursuant to these agreements.

- 3 -

At some point after the death of Decedent, Appellant filed a petition for judicial review with the orphans' court in Westmoreland County. That court denied the petition by order dated August 25, 2020, on the grounds that there had been no determination of incapacity made, the request for a guardianship was resolved by a consent agreement among the parties without the appointment of a guardian, and the relief sought would involve payments to or from the Estate in Fayette County over which the Westmoreland court would have no jurisdiction.

Appellant then filed a "Petition to Contest the Will of Jennie Grados" in Fayette County on September 15, 2020. Despite the repeated recommendations of this court that Appellant should retain counsel, Appellant elected to proceed *pro se*. This court has had difficulty defining the issues because of Appellant's inartful pleadings, disregard for the rules, and the lack of legal authority offered in support of his positions. Appellant's original September 15, 2020[] petition offer[ed] various allegations which the court summarizes as follows:

1. Decedent was experiencing severe signs of dementia in 2017, supported by the medical opinion of Dr. Kasden, and was therefore not capable of executing legal documents;

2. The conveyance of the Fayette County property to [Kathy] and her husband was improper;

3. [Kathy] and [Jennifer] made various changes to Decedent's accounts for their own benefit; and

4. Decedent was not competent to enter into the [Lease] and [Family] Care Agreements, which benefited [Kathy] and [Jennifer] at the expense of the Estate, and payments made under these agreements along with various fees labeled as "reimbursements" should be voided.

After Appellant's petition was filed, the [co-]executrices filed a "First and Final Account" on December 30, 2020. The court held a status conference on February 19, 2021, and after it became clear that Appellant was challenging various *inter vivos* transactions and not the will itself, the court granted Appellant "an additional 20 days in which to resubmit a claim in conformity with the local rules and the Pennsylvania Rules of Court." []Order[, 2/23/21 (single page).] Appellant then filed objections to the

accounting on March 3, 2021. The parties filed responses but never requested a hearing. On June 9, 2021, this court entered the order and opinion that was the subject of the first appeal. This court denied Appellant's claim regarding the personal property he stored on Decedent's property and directed the Estate to supplement the record with additional evidence concerning the [Lease Agreements] and [Family] Care Agreements within thirty (30) days.

The Superior Court held that this court's June 9, 2021[] order did not qualify as a collateral order under Pa.R.A.P. 313 and was not otherwise appealable under Pa.R.A.P. 342, quashing the appeal and remanding back to the orphans' court for further proceedings, with the recommendation that this court schedule a hearing on Appellant's objections.[2]

That hearing took place on August 31, 2022. Appellant continued to represent himself despite the court's recommendation that he retain counsel. During the hearing, the court referred to three documents filed by Appellant as the source of his objections in this matter.[12] The court stressed to Appellant multiple times during the hearing that this would be his only opportunity to present any evidence in support of his objections, and pointed out to Appellant that he was about to rest his case without addressing essential elements of his claims. The court further noted that the pleadings Appellant filed did not set forth many of the claims or legal theories that Appellant appeared to be arguing or for which Appellant offered evidence at the hearing.

[12] These three documents consisted of the original Petition to Contest the Will of Jennie Grados, filed on September 15, 2020; the Objections to the Accounting of the Estate of Jennie Grados, filed on March 3, 2021; and the Petitioner's Correspondence to Response to Petition filed by Attorney Timothey Maata [*sic*] filed on April 12, 2021.

Appellant indicated that he wanted to admit the transcript of Dr. Kasdan's testimony from the October 16, 2017[] proceedings in Westmoreland County but had not yet been able to obtain the transcript. At the close of the hearing, the court granted Appellant ten (10) days to obtain and file the certified transcript from Westmoreland County and twenty (20) days to

_____

[2] ***See In re Estate of Grados***, 277 A.3d 1159 (Pa. Super. April 25, 2022) (unpublished memorandum).

submit any legal authority as to whether an undue influence argument would apply to the [Lease Agreements] and [Family] Care Agreements and whether such arguments were properly raised.

The court entered a separate order dated September 2, 2022, denying [Appellant's] Motion to Disqualify Counsel. On September 9, 2022, Appellant submitted the Kasdan hearing transcript from the Westmoreland County proceedings, which were [*sic*] filed with the other hearing exhibits on October 20, 2022. Appellant submitted a "Response to Directive by Judge Leskinen Pursuant to Hearing Held August 31, 2022[."] This document was dated September 14, 2022, but was not filed until November 2, 2022. This may have been submitted in response to the court's request for legal authority, though the document contains no references to any case law or statutes. On September 23, 2022, counsel for the Estate filed a motion to exclude deposition, motion to preclude claim, and a response to [Appellant's] claim. This court entered an order (dated October 11, 2022, and filed the next day), finding that Appellant … had not met his burden of establishing a confidential relationship, substantial benefit, or weakened intellect. With regard to his personal property, any claims for such property by Appellant/Objector would be against his sisters and not against … Decedent's Estate, which was not in existence at the time the items were removed from Decedent's property. Further[,] the statute of limitations on a conversion claim had already expired. The court dismissed the objections and ordered the Estate to prepare an updated final account and decree of distribution. [An] opinion in support of the October 11, 2022[] order was filed on October 20, 2022.

Appellant filed an appeal from the October 11, 2022[] order, which was docketed at No. 1311 WDA 2022. The Superior Court quashed that appeal by *per curiam* order filed on September 8, 2023, without prejudice to Appellant's right to appeal a final order once it was entered. The Estate filed an updated final account on September 14, 2023. The court entered a decree on September 15, 2023, confirming the accounting and directing the distribution of assets. Appellant did not file objections to the final accounting or to the decree….

Trial Court Opinion ("TCO"), 12/12/23, at 1-8 (cleaned up; some footnotes omitted).

On September 29, 2023, Appellant filed a timely appeal from the orphans' court's decree confirming the final accounting of the Estate.[3]  The orphans' court did not direct Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Nonetheless, Appellant filed a Rule 1925(b) statement on October 11, 2023.  On appeal, Appellant presents the following issues for our review:

1. Attorney Timothy M. Maatta, counsel for the co-executrixes, who also represented the decedent, obtained confidential information from the decedent and then used that information to financially benefit his current clients, the co-executrixes. Attorney Maatta also failed to take appropriate precautions when dealing with a client with diminished mental capacity and failed to take precautions to safe keep his client's ([the] decedent[]) property.

2. An active court order[] dated November 2, 2017, issued by Judge Scherer of the Court of Common Pleas of Westmoreland County, Orphan's Court Division, was violated by Attorney Timothy M. Maatta, Attorney Christian DeDiana and the co-executrixes.

3. Judge Steve Leskinen chose to disregard the credible testimony of Pennsylvania board[-]certified neurologist, D[r.] Kasdan, who described in detail the decedent's severe cognitive impairment.  Instead, Judge Leskinen chose to somehow bypass D[r.] Kasdan's testimony with testimony of Attorney DeDiana who is not qualified to evaluate anyone, while personally obstructing … Appellant from obtaining relevant medical records of the decedent.

4. [Lease Agreements] and [Family C]are [A]greements were entered into while the decedent was mentally incapacitated and in violation of an existing court order as described above.

_____

[3] **See** Pa.R.A.P. 342(a)(1) (providing that an appeal may be taken as of right from an order confirming an account or directing distribution for an estate).

5. Judge … Leskinen failed to have the co-executrixes or counsel submit evidence to support the withdrawal of thousands of dollars from the estate of the decedent and improperly labeled as "reimbursements and expenses" by Attorney DeDiana, which is a direct violation of #4(b) of the court order described in #2 above.  [] Appellant previously made Judge Leskinen aware of this fact through court filings.  (Appendix E)

6. Gas royalties as listed in the decedent[']s will have not been properly accounted for by Attorney DeDiana[,] which Judge … Leskinen was also made previously aware of by … Appellant through court filings.

7. Judge … Leskinen heard testimony of Jennifer…, a co-executrix, who admitted in court on August 31, 2022, and heard by … Appellant's witness, that she took possession of a motor vehicle, 2005 Polaris 90cc ATV quad valued at $1000.00 and titled in … Appellant's name, without any legal authority to do so and did nothing in response.

Appellant's Brief at 4-5 (unnecessary capitalization omitted).

At the outset, we note that appellate briefs and reproduced records must materially conform with the requirements of the Pennsylvania Rules of Appellate Procedure.  Pa.R.A.P. 2101.  This Court may quash or dismiss an appeal if the appellant fails to substantially comply with these Rules.  *Id.*[4] "Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant.  To the

---

[4] When considering whether the appropriate action should be quashal or dismissal of an appeal, this Court has stated the following:

> Quashal is usually appropriate when the order below was unappealable, the appeal was untimely, or the Court otherwise lacked jurisdiction….  [W]here the problem is numerous defects in Appellant's brief, the appropriate disposition is dismissal.

*Bronson v. Kerestes*, 40 A.3d 1253, 1255 (Pa. Super. 2012) (internal citations omitted).

contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." ***In re Ullman***, 995 A.2d 1207, 1211-12 (Pa. Super. 2010) (internal citation omitted).

Based on our review of the record, it appears that Appellant continues to flout this Court's Rules of Appellate Procedure. First, Appellant's *pro se* brief contains numerous defects. ***See*** Pa.R.A.P. 2111-2119 (discussing the required content of appellate briefs and addressing specific requirements for each subsection of the brief). Appellant failed to set forth the appropriate scope of review and standard of review, as required by Rule 2111. ***See*** Pa.R.A.P. 2111(a)(3).[5] Moreover, he failed to concisely state the issues to be resolved on appeal, as required by Rule 2116. ***See*** Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein…."). Here, Appellant's Statement of the Questions Involved spans two pages and consists of seven numbered paragraphs. ***See*** Appellant's Brief at 4-5. Only three of those numbered paragraphs, however, contain alleged errors of the orphans' court. ***See id.*** at

---

[5] We acknowledge that Appellant's Brief contains a section titled "Statement of the Scope and Standard of Review." ***See*** Appellant's Brief at 3. However, this section contains factual allegations and legal argument, rather than a statement of the proper scope and standard of review to be applied by this Court. ***See id.***

¶¶ 3, 5, 7. The other four paragraphs merely contain factual averments and unsupported legal conclusions. *See id.* at ¶¶ 1, 2, 4, 6.

Appellant's brief also fails to comply with Rule 2119(a), which mandates that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Contrarily, the 13-page argument section of Appellant's brief does not contain a single subsection or heading to correspond with the questions presented and contains very little legal analysis in support of Appellant's position. *See* Appellant's Brief at 15-27.

Additionally, Appellant failed to file a designation of the parts of the record he intended to reproduce, as required by Pa.R.A.P. 2154(a), nor did he file a reproduced record concurrently with his appellate brief, in compliance with Pa.R.A.P. 2186(a). In fact, to date, no reproduced record has been filed by Appellant. *See* Pa.R.A.P. 2152 (designating the required contents of the reproduced record); *Rosselli v. Rosselli*, 750 A.2d 355, 357 (Pa. Super. 2000) ("Compliance with the Pennsylvania Rules of Appellate Procedure 2152-2154 regarding contents of reproduced records on appeal is mandatory, not directory.").

Even if we were to overlook Appellant's failure to file a reproduced record and determine that the defects in his brief were not substantial enough to impede our review, his lack of compliance with the foregoing Rules is

- 10 -

compounded by the fact that he failed to order the notes of testimony from the August 31, 2022 hearing. **See** Correspondence from Fayette County Register of Wills Office, 12/13/23, at 1 (indicating that Appellant inquired about the transcript, but "after he found out how much it would cost him[, he] never requested it"). It is well settled that Appellant has the burden to produce a complete record for appellate review. **In re O'Brien**, 898 A.2d 1075, 1082 (Pa. Super. 2006) ("It is an appellant's duty to insure [sic] that the certified record contains all documents necessary for appellate review."). The failure to assure that the certified record is sufficient to conduct a meaningful review warrants disposing of the appeal without reaching the merits. **See Smith v. Smith**, 637 A.2d 622, 624 (Pa. 1993) ("[W]here the appellant is remiss in fulfilling the duty to provide a record which is sufficient to permit meaningful appellate review as is the case here, the appeal must be quashed.") (citation omitted).

In reaching its September 15, 2023 decision, the orphans' court relied heavily on the evidence (of lack thereof) and testimony produced by the parties at the August 31, 2022 hearing on Appellant's objections to the final accounting. Regarding Appellant's apparent claims of undue influence, the orphans' court opined, in part:

> Appellant offered the testimony of Deborah Bruni, a licensed practical nurse (LPN) for thirty-four years as evidence that there were less expensive alternatives available to Decedent than under the [Lease Agreements] and [Family] Care Agreements. Appellant did not provide a curriculum vitae for Ms. Bruni. Bruni testified that she had experience working with the Medicare PACE program, which she said provides various programs and services

- 11 -

to people suffering from dementia. Bruni offered testimony on a number of topics, including … Decedent's mental status in 2017, whether Decedent would have been eligible for PACE or other similar services, and the reasonableness of the charges paid to [Kathy] and [Jennifer] under the [Lease Agreements] and [Family] Care Agreements.

For a variety of reasons, the court did not find Bruni credible in her testimony. Bruni acknowledged that she had not confirmed whether Decedent, who had significant assets and regular income, would have been eligible to receive the services Bruni described at no cost or a reduced cost. Bruni offered no evidence of comparable costs to support her contention that the amounts paid to [Kathy] and [Jennifer] were "exorbitant" as compared to equivalent services that may have been available. Moreover, though Bruni was proffered for her experience as an elder care nurse to opine as to the reasonableness of the financial arrangements at issue, Bruni is Appellant's girlfriend[,] and they are involved in a romantic relationship.

The Estate offered the testimony of … DeDiana, a licensed Pennsylvania attorney, a certified elder law attorney, and [CPA], who was retained to prepare the annual accounting required under the Westmoreland County consent order and also prepared the [Lease Agreements] and [Family] Care Agreements. After the death of Decedent, Attorney Maatta also retained DeDiana to prepare the accounting for the Estate[]. DeDiana testified that Decedent's income and assets would have rendered her ineligible for many of the services Bruni referenced unless Decedent was willing to private[ly] pay out of pocket for the cost and further, that Bruni appeared to be confusing some of the services offered through PACE with services available through the Medicaid Waiver Programs.

DeDiana testified that he met with Decedent in early 2019, who indicated that she wished to live with her daughters and to compensate them for her housing and care. DeDiana testified that when he met Decedent, he did not observe any hearing problems, that she actively participated in the discussion, and he did not observe any signs that would indicate incapacity or incompetence. At the time, Decedent and her daughters were in an arrangement where she spent four days each week with [Kathy] in her Fayette County home and three days each week with [Jennifer] in her Washington County home, and Decedent appeared to be satisfied with this arrangement.

DeDiana testified that he had experience preparing rental and care agreements and described in detail the process by which he researched and arrived at the fair market value of the housing and services [Kathy] and [Jennifer] provided. DeDiana referred to publicly available information on rental housing in the area where each of the two daughters resided, along with current rates for comparable in-home services from local agencies. DeDiana's testimony that he was solely responsible for setting the reimbursement amounts in the [Lease Agreements] and [Family] Care Agreements was uncontroverted, and Appellant offered no evidence challenging any specific charges. The court found DeDiana's testimony on these issues to be credible and persuasive.

None of the parties dispute the fact that Decedent required supportive care in the months prior to her death. Appellant's position appears to be that Decedent could have remained in her home with in-home services, but [he] offered no credible evidence as to whether such an arrangement would have resulted in a reduced cost to Decedent. This line of reasoning also fails to consider Decedent's wishes. Decedent had the option during her life to choose where she lived and what services she received, and if she chose to spend her money on a more expensive alternative to the detriment of her residual estate, it was her right to make those choices.

Ultimately, the credible evidence shows that [Kathy] and [Jennifer] were compensated at a fair market value for the housing and services they provided during the time [Decedent] required supportive care. This did not result in any substantial benefit or gift to [Kathy] and [Jennifer] for the purposes of establishing undue influence.

TCO at 10-13 (cleaned up).

As to Appellant's alleged errors regarding the final accounting of the Estate and the annual accounting prepared by DeDiana for the period of November 2018 through November 2019, the orphans' court explained:

The court considered the objections Appellant filed … to the original First and Final Account … and considered argument related to the accountings filed in the Westmoreland County guardianship matter. Appellant has had ample opportunity to litigate those

documents and to present any relevant testimony or other evidence in support of his objections. The September 14, 2023 final accounting merely incorporated the findings the court had already made. As far as any arguments regarding the form of the Westmoreland County accountings or the … final accounting of the Estate, or any charges for reimbursements and expenses contained in those documents, Appellant did not address these matters at the hearing, nor did he offer evidence to support his objections[. T]herefore[,] they are deemed waived.

*Id.* at 13 (cleaned up).

The orphans' court further stated that Appellant presented no argument, testimony, or other evidence on the issue regarding the use of natural gas royalties; thus, it deemed this claim waived. *Id.* at 14. Finally, regarding Appellant's concerns regarding the disposition of various items of personal property, the orphans court determined that

[t]he uncontroverted evidence presented at the hearing clearly showed that any disposition of items belonging to Appellant took place not later than 2018, well before … Decedent's death. [] Decedent's Estate was not in existence at the time of disposition of these items, and thus any claim for conversion would be against Appellant's sisters, not against the Estate. The statute of limitations relating to conversion has already run with respect to these items.

*Id.*

Appellant's entire argument essentially attacks the orphans' court's credibility and weight determinations regarding the testimony produced at the August 31, 2022 hearing, as well as its alleged failure to require evidence to justify certain disbursements from the Estate. *See* Appellant's Brief at 15-27. "When reviewing a decree entered by the [o]rpahns' [c]ourt, this Court must determine whether the record is free from legal error and the court's factual

findings are supported by the evidence." ***In re Fiedler***, 132 A.3d 1010, 1018 (Pa. Super. 2016). Additionally, we will not reverse the orphans' court's credibility determinations absent an abuse of that discretion. ***Id.*** Since the notes of testimony are not included in the certified record transmitted to this Court on appeal, the certified record is deficient and we cannot engage in meaningful appellate review. ***See*** Pa.R.A.P. 1191(d) ("If the appellant fails to take the action required by these rules and the Pennsylvania Rules of Judicial Administration for the preparation of the transcript, the appellant court may take such action as it deems appropriate, which may include dismissal of the appeal."); ***In re R.N.F.***, 52 A.3d 361, 363 (Pa. Super. 2012) (dismissing appeal from decree terminating parental rights where absence of a crucial transcript precluded meaningful appellate review).

Accordingly, we dismiss Appellant's appeal from the September 15, 2023 decree confirming the final accounting of the Estate of Jennie P. Grados.

Appeal dismissed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/6/2024

- 15 -